Albert H. MARTA, Defendant Below,
Appellant,

v.

Francis M. SULLIVAN, Dorothy B. Sulli-
van, William J. Collins, Mary J. Collins,
Theresa D. Messick, George E. Messick,
Leo J. Cotnoir, Pauline L. Cotnoir and
Church of the Nazarene, a corporation of
the State of Delaware, Plaintiffs Below,

and

Board of Adjustment of the City of Newark,
Defendant Below, Appellees.

Supreme Court of Delaware.

Nov. 22, 1968.

William F. Lynch, II, of Morris, James,
Hitchens & Williams, Wilmington, for
defendant below, appellant.

Francis M. Sullivan and other appellees,
per se.

Clyde M. England, Jr., of Killoran & Van
Brunt, Wilmington, for the City of New-
ark.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice:

The determinative question in this zoning case is whether the controlling section of the Newark Zoning Ordinance [Section 501(d)][1] contains sufficient standards and guidelines to constitute a lawful delegation of legislative power and to afford due process. We think not.

## I.

The appellant, Albert H. Marta, applied for a permit to construct garden-type apartment buildings in a Residential "RD" District in the City of Newark. Under Section 501(d) of the Newark Zoning Ordinance, apartments are a permitted use in such District "when authorized by the Board of Adjustment after public hearing." At such hearing, the appellee Francis M. Sullivan, an adjoining property owner, and other neighbor-residents appellees herein, objected to the issuance of the permit upon the ground, *inter alia,* that the application failed to comply with the so-called "50% rule" of Section 501(d):

"When the immediate neighborhood is more than 50% developed, approval of 75% of the residents within a radius of one-eighth mile of the land in question must be secured."

The Board of Adjustment granted permission to construct the apartments. Thereupon, by certiorari, the neighbors obtained review by the Superior Court. That Court reversed the Board and remanded with instructions to deny the permit, ruling that the "50% rule" of Section 501(d) was constitutional and applicable; and that since Marta's petition did not have the approval of 75% of the residents in the specified area, the Board lacked the power to grant the permit. Marta appeals.

## II.

A legislative body, such as the City Council of Newark, may not lawfully delegate its legislative powers to others. This non-delegation principle is especially compelling when a zoning ordinance is involved, because such legislation regulates the right to the enjoyment of private property. Compare State v. Durham, 6 Storey 170, 191 A.2d 646 (1963).

The non-delegation rule does not require that all details of the administration of a law be spelled out. A legislative body may establish basic policy and vest in others the power to administer the declared legislative policy. But to avoid an unlawful delegation of legislative power, a statute must establish adequate standards and guidelines for the administration of the declared legislative policy and for the guidance and limitation of those in whom discretion has been vested; this to the end that there may be safeguards against arbitrary and capricious action, and to assure reasonable uniformity in the operation of the law. See e. g., Chartiers Valley Joint Schools v. County Board of School Directors, etc., 418 Pa. 520, 211 A.2d 487 (1965); Waterville Hotel Corp. v. Board of Zoning Appeals, Me., 241 A.2d 50 (1968); Keating v. Patterson et al., 132 Conn. 210, 43 A.2d 659 (1945).

The power to grant or deny an exception to a zoning ordinance is such legis-

1. Sections 500 and 501 of the Zoning Ordinance of the City of Newark, enacted by the City Council in 1949, provide that the following use regulations shall apply in Residential "RD" Districts:

*"Section 501. Use Regulations.* No building shall be erected, altered or used except for the following uses:

\*　　\*　　\*　　\*　　\*

"(d) Multiple dwelling, provided the minimum open area on the lot is equal to one thousand six hundred (1600) square feet per family, when authorized by the Board of Adjustment after public hearing.

"When the immediate neighborhood is more than 50% developed, approval of 75% of the residents within a radius of one-eighth mile of the land in question must be secured."

lative power as falls within the non-delegation rule. An ordinance vesting that power must contain administrative standards and guidelines sufficient to fulfill the above-mentioned criteria. Compare Norate Corp. v. Zoning Bd. of Adjustment, etc., 417 Pa. 397, 207 A.2d 890 (1965); Fernald v. Bassett, 107 N.H. 282, 220 A.2d 739 (1966).

Does the "50% rule" provision of Section 501(d) meet such tests? We think not.

We pass over the lack of standards and guidelines as to the undefined term "immediate neighborhood" used in Section 501(d). In the instant case, the ambiguity of "immediate neighborhood" gave rise to three different, but reasonable, interpretations of the term.[2] We pass over that defect in the Ordinance, in itself possibly a fatal delegation of legislative power, because there may be a reasonable difference of opinion on the subject. See State ex rel. Saveland Park Holding Corp. v. Wieland, 269 Wis. 262, 69 N.W.2d 217 (1955).

■ It is beyond question, however, that the Ordinance purports to delegate to neighboring residents[3] an uncontrolled and undefined power to impose a zoning restriction and to limit the use of the property of another. The neighbors are not required to express an objection or furnish any reason for withholding assent; and the Board is without power to authorize a usage, otherwise permitted by the Ordinance, even when no reason for withholding assent is stated or when the objection as stated is unsupportable by good and valid reasons.

As we have seen, to be valid, a zoning ordinance must provide a sufficient stand-ard of administration; its application may not be left to the arbitrary or capricious will of any person or group of persons. Under the non-delegation rule, the City Council could not vest in the Board of Adjustment or any other municipal authority an uncontrolled zoning discretion. It follows that the Council may not delegate to neighbors such unregulated power.

This subject matter was dealt with in Appeal of Lloyd, 9 W.W.Harr. 15, 196 A. 155 (1937). There under scrutiny was a Wilmington zoning ordinance providing that the City Board of Adjustment was authorized to permit the owner of a house to construct a porch thereon provided that the written assents of certain property owners in the neighborhood were secured. There, an eminent three-judge Superior Court held that the attempted delegation of power to neighboring property owners violated due process, stating:

"The ordinance as applied to the property of the petitioners, purports to vest the majority of lot owners on the same street and block, and the owners of lots immediately adjoining the property concerned, with an uncontrolled and undefined power to limit the use of property. They are not required even affirmatively to object to the proposed use; nor to give any reason for withholding assent; nor does the ordinance reserve to the Board of Adjustment the safeguarding power to permit the desired use if no reason is given for withholding assent, or if the reason given is trivial or unsubstantial. No rule, standard or guide is established. Inaction itself is

2. The subject tract lays on the boundary of the city limits. The City Planner advised the Board that "immediate neighborhood" was to be ascertained on an acreage basis. Marta contended that "immediate neighborhood" was to be determined on a perimeter basis. The objecting neighbors contended that neither of those approaches was proper because they included lands outside the city limits as to which the City Zoning Ordinance could have no application. The Superior Court agreed with the latter approach to the determination of "immediate neighborhood", holding that only the city side of the subject tract was to be considered; and that more than 50% thereof was "developed".

3. The evil of this Ordinance is accentuated by granting the controlling zoning voice to neighboring residents rather than, as is usual in consent ordinances, to neighboring property owners. Residents would include transients, boarders, visitors, and summer-time tenants.

sufficient to deny the proposed use. The result is that, in the City of Wilmington, the right of an owner of property to enclose his porch is absolutely dependent upon the humor, crotchet or caprice of his neighbor. His veto by mere inaction is absolute. His will is law. This is an intolerable situation in a free country."

We approve the views thus expressed and deem them applicable to the "50% rule" of Section 501(d).

Our attention has been drawn to Myers v. Fortunato, 12 Del.Ch. 374, 110 A. 847 (1920) which dealt with a Wilmington zoning ordinance prohibiting the erection of public garages in residential portions of the city unless consented to by certain adjoining property owners. This Court there held that the law was valid, and not an unlawful delegation of legislative authority, because it was complete in itself and did not depend for its existence upon the act of the adjoining property owners. This Court thereby drew the well-recognized distinction between an ordinance permitting neighbors to *remove* a use restriction and one permitting neighbors to *impose* a use restriction. Compare Eubank v. City of Richmond, 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156 (1912); Cusack Co. v. City of Chicago, 242 U.S. 526, 527, 37 S.Ct. 190, 61 L.Ed. 472 (1916).

The instant case is distinguishable from *Myers* in that here the law is not "complete in itself wholly independent of what any one may do or say." Here, multiple dwellings are not prohibited; on the contrary, they are expressly permitted when authorized by the Board; but, regardless of its own favorable judgment in the matter (as in the situation before us), the Board may not give such authorization without the requisite approvals of the neighboring residents. Here, the neighbors are empowered to *impose* a use restriction by mere failure

to act: by withholding the approvals upon which the Board's power to authorize the use sought is made to rest. Unlike *Myers,* the power of the neighbors is not limited here to the *removal* of a prohibited use.

Accordingly, we hold that the "50% rule" of Section 501(d) is repugnant to due process and constitutes an unlawful delegation of legislative authority in that the Ordinance fails to establish the required constitutional standards and guidelines to govern the exercise of discretion by the neighboring residents; fails to guard against whim, arbitrariness, and capriciousness; fails to assure uniformity in the operation of the law; and fails to furnish criteria by which the propriety, reasonableness, and legality of a zoning regulation may be weighed and tested.

### III.

In the Superior Court, the appellee-neighbors attacked the proceedings of the Board of Adjustment on several grounds including, *inter alia,* the allegation that only two members of the Board were present at the public hearing; that the Board considered documents which had not been presented and made part of the record at the hearing; that a deliberation-meeting of the Board was held without notice to the parties; that the Board's final order is unclear; that, in any event, the Board had no authority to act because Marta's application had not been formally approved by the Planning Commission.

■ The Superior Court considered these various contentions and ruled against the appellees on each. Since the appellees did not take a timely appeal [4] from those rulings of the Superior Court, they are not properly before us for review. Nevertheless, because the appellee-neighbors are here without counsel, we have reviewed these

---

4. On August 5, 1968, the appellee-neighbors attempted to bring a cross-appeal from the Order below entered March 27, 1968. Obviously, this attempted appeal must be dismissed for failure to bring it within the 60 day period prescribed by the Rule. On November 9, 1968, the appellees sought "special leave to appeal", relying upon Rule 8 Del.C.Ann. That Rule governs the filing of briefs, not appeals.

points. We find no error in the Superior Court's rulings thereon.

\* \* \*

It is our conclusion, therefore, that the "50% rule" of Section 501(d) is void as a deprivation of due process and an improper delegation of legislative power; that it is not a valid restriction on the power of the Board of Adjustment to authorize multiple housing; that, accordingly, the Superior Court erred in reversing the action of the Board for noncompliance with the "50% rule".

The judgment of the Superior Court is reversed and the cause remanded for further proceedings consistent herewith.