**608**

**COOCH'S BRIDGE CIVIC ASSOCIATION,** Chestnut Hill Civic Association, and Alexander J. Taylor, Jr., Chairman, Tyson F. Sartin, Russell W. Carter, Gene Derrickson and Edward W. Stansky, constituting the Board of Adjustment of New Castle County, Respondents Below, Appellants,

v.

**PENCADER CORPORATION, a corporation of the State of Delaware, Petitioner Below, Appellee.**

Supreme Court of Delaware.

Jan. 13, 1969.

Clyde M. England, Jr., of Killoran & Van Brunt, and Harvey B. Rubenstein, Wilmington, for respondents below, appellants.

Edmund N. Carpenter, II, and William E. Wiggin, of Richards, Layton & Finger, Wilmington, for petitioner below, appellee.

CAREY and HERRMANN, JJ., and MARVEL, Vice Chancellor, sitting.

HERRMANN, Justice.

This is a zoning case involving an application of Pencader Corporation for a building permit to construct a rock crushing installation on its R–2[1] lands, near Newark, on which a commercial quarry has been authorized. From the Building Inspector's denial of the permit, Pencader appealed to the New Castle County Board of Adjustment; and upon its affirmance of the Building Inspector's determination,

1. Lands zoned R–2 were designated for "agricultural and general purpose"; and excavation of rock in such area was permissible under the Zoning Code upon approval of the Regional Planning Commission. New Castle County Zoning Code, Art. IV, Sec. 2; Art. XVII, Sec. 6.

Pencader obtained review by the issuance of certiorari out of the Superior Court under 9 Del.C. § 2618.[2] Thereupon, the Superior Court reversed the decision of the Board of Adjustment holding that a rock crusher could be operated in an R–2 area either as a principal or an accessory use. Then, the Cooch's Bridge and Chestnut Hill Civic Associations were permitted to intervene, and they appealed the Superior Court decision to this Court, the City of Newark appearing as Amicus Curiae in their support. Holding that the record lacked necessary factual findings, this Court reversed the actions of both the Superior Court and the Board of Adjustment and remanded for a determination by the Board as to (1) whether in relationship to the permitted quarry operation, the proposed operation of a rock crusher would be, in fact, an "accessory use" as defined in the Zoning Code; and, if so, (2) whether such accessory use would "alter the character of the premises" on which it was to be located or "impair the neighborhood", in violation of Art. XVII, Section 3 of the Code. See 199 A.2d 326.

Upon remand, after further hearing, the Board of Adjustment found that (1) a rock crusher of the type contemplated by Pencader would be an accessory use to the permitted quarry operation; but that (2) such accessory use would "alter the character of the immediate premises upon which it is located, for in effect it produces and causes the premises to become a processing center and represents a manufacturing use of the land"; and by reason of the residuary dust and noise, the crush-

er would "seriously impair the character, nature and residential design of the general neighborhood." Thereupon, the Board of Adjustment again ruled that the rock crushing installation could not be permitted; again Pencader obtained certiorari out of the Superior Court under the Statute. Upon review of the record, the Superior Court again reversed the Board stating:

"I have reviewed the record with care and it is my conclusion that the Board was not justified in findings of impairment of the neighborhood or alteration of the character of the area in question.

"The Board erred, in my opinion, in allowing itself to be persuaded by the prospects for future development of the surrounding neighborhood."

Again the Civic Associations appeal to this Court.

The determinative question before us is whether there was substantial evidence before the Board of Adjustment to support its finding that the rock crusher installation contemplated by Pencader would "impair the neighborhood."[3] The Board's finding of fact was reviewable by the Superior Court only to the extent of determining whether there was substantial evidence to support it. This is the scope of review of factual findings of the Board in a statutory certiorari proceeding brought under 9 Del.C. § 2618 (or the present § 1353) for review of a decision of the Board of Adjustment. See Searles v. Darling, 7 Terry 263, 83 A.2d 96 (1951);[4]

---

2. 9 Del.C. § 2618 (superseded in 1967 by 9 Del.C. § 1353) provided, in part, that the Superior Court may allow a writ of certiorari, directed to the Board of Adjustment to review its decision, upon a duly verified petition that the Board's "decision is illegal in whole or in part."

3. For present purposes, we assume *arguendo*, the accuracy of the Board's finding that the rock crushing operation would be a permissible accessory use. Since the Zoning Code barred such use if it would "alter the character of the premises" *or* "impair the neighborhood",

a finding as to the latter fact, supported by substantial evidence, would be dispositive.

4. The *Searles* case is controlling, although it involved the Wilmington Board of Adjustment rather than the County Board, because of the similarity of the provisions for judicial review of Board decisions by statutory certiorari proceedings. Compare 22 Del.C. §§ 328–332 with 9 Del. C. §§ 2618 and 1353. Also compare the rule in common law certiorari proceedings that the evidence before the lower tribunal is not a proper part of the record

compare Application of Beattie, 4 Storey, 506, 180 A.2d 741 (1962).

The Board's finding of impairment of the neighborhood was supported by the following evidence: The Executive Director of the Newark Housing Authority testified that she resided approximately one-half mile from the Pencader site; that the area in the vicinity had been emerging continuously as residential, with existing houses being in upper price ranges. A real estate broker and appraiser, active in the area, testified that the neighborhood had been developing as residential, and was not suitable for commercial or industrial development. The Planning Director of the City of Newark testified that the area in a radius of three miles was not suitable for industrial or commercial use, was developing as residential, and that the City's planning studies show the area as residential or recreational. A consultant for the Planning Commission of Newark testified that the land in the neighborhood was primarily useful for residential development as shown in the County plan; that the area was also desirable for park and recreational purposes; but was not suitable for industrial usage.

A manufacturer of rock crushers and dust-control equipment testified that rock crushers create dust and noise. An officer of a company operating a Maryland quarry and stone crushing operation testified that the noise of the crusher travels "further than several hundred yards"; that dust is emitted "just about at every point you handle the stone"; that the major part of the dust is created by the crushing; and that uncontrolled dust carries for a distance of at least half a mile, depending upon wind conditions. Finally, the Director of the Division of Air Pollution for the Pennsyl-

vania Department of Health testified that the kind of stone dust created by the proposed crusher is very fine and could "cover an area of at least a mile"; that meteorological conditions in the area are adverse in that they are conducive to a build-up of dust concentration.

■ The foregoing constitutes substantial evidence sufficient, in our view, to support the Board's finding that the proposed rock crushing operation would "impair the neighborhood." In view of such evidence, the Superior Court was not free, in this statutory certiorari proceeding, to re-weigh the evidence and to disturb the Board's finding. It follows that the judgment of the Superior Court must be reversed and the cause remanded with instructions to affirm the decision of the Board of Adjustment.

In passing, we are impelled to comment on two matters that have come to our attention on this appeal:

The first is the matter of "field trips" by members of the Board to several nearby quarries and their consideration in this case of facts learned during those visits. The tours and related discussions with various persons were uncontrolled, and counsel were not in attendance.

■ Fortunately, as we have seen, there was substantial evidence adduced at the hearing before the Board to support the Board's finding of impairment of the neighborhood. The trips and information acquired thereby were not evidence and, alone, would not have supported a finding of fact. Such visits are comparable, we think, to "views" by commissioners in condemnation cases; they are not considered as evidence and are only "for the purpose

sent up for review. See DuPont v. Family Court, 2 Storey 72, 153 A.2d 189, 194 (1959); Rodenhiser v. Department of

Public Safety, 11 Terry 585, 137 A.2d 392 (1957); Kowal v. State, 10 Terry 549, 121 A.2d 675 (1956).

of better understanding the evidence." See 10 Del.C. § 6108. Just as matters known personally to members of a board or commission, but not established by evidence, cannot be considered on appellate review [see Zoning Board of Adjustment of New Castle County v. Dragon Run Terrace, Inc., Del., 222 A.2d 315, 318 (1966); Rollins Broadcasting of Delaware, Inc., etc. v. Hollingsworth et al., Del., 248 A.2d 143 (decided November 4, 1968)], so facts learned by members of the Board on trips, such as were made in the instant case, may not be considered upon appellate review as support for factual findings. Since there was substantial evidence adduced at the hearing before the Board in the instant case, however, our only purpose in commenting on the subject here is to raise a caveat for future cases.

The other matter requiring notice is the age of this case. In January 1964, this Court remanded the cause for determination by the Board of the two factual issues propounded. 199 A.2d 326. The Board held a hearing on the remand in November 1964; it rendered its decision in February 1966. Certiorari was taken to the Superior Court in March 1966. Decision was reserved by the Superior Court in October 1967; and was rendered in April 1968. The cause was argued before this Court in October 1968.

Thus, 5 years have elapsed since the cause was remanded for factual findings —and the case was two years old then.

This kind of delay, in the disposition of proceedings before a Board of Adjustment and the Courts, reflects badly upon the administration of justice. We see nothing in the record, and could ascertain nothing by inquiry at the oral argument, to justify a delay that appears, in the absence of some extenuating circumstance, inexcusable. We take the occasion to express our concern regarding the derogatory reflection upon the administration of justice that arises from a situation such as this.