Francis M. SULLIVAN et al., Plaintiffs
Below, Appellants,

v.

Albert H. MARTA and Board of Adjust-
ment of the City of Newark, De-
fendants Below, Appellees.

Supreme Court of Delaware.

July 10, 1969.

Francis M. Sullivan and other appellants,
per se.

William F. Lynch, II, of Morris, James,
Hitchens & Williams, Wilmington, for Al-
bert H. Marta, defendant below, appellee.

Clyde M. England, Jr., of Killoran & Van Brunt, Wilmington, for Board of Adjustment of the City of Newark, defendant below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice:

The Superior Court has affirmed the permission granted by the Board of Adjustment to Albert H. Marta to construct a garden-type apartment project in the City of Newark in a Residential "RD" District. Under Section 501(d) of the Newark Zoning Ordinance, multiple dwelling is a permitted use in such District "when authorized by the Board of Adjustment after public hearing." [1]

This is the second appeal in this case. In Marta v. Sullivan, Del.Sup., 248 A.2d 608 (1968), upon appeal by Marta, we held unconstitutional the so-called "50% rule" of Section 501(d); and we reversed the action of the Superior Court which had reversed the Board's ruling in favor of the apartment development. Upon remand, the Superior Court affirmed the Board after finding substantial evidence to support the Board's authorization of multiple dwelling; and the Court below limited itself to that issue although the neighbor-protestants sought to raise other questions. The neighbor-protestants bring this appeal.

The determinative question on this appeal is whether the record shows sufficient substantial evidence upon which the Board of Adjustment could properly have based its decision. If so, the action of the Board must be sustained. Searles v. Darling, 7 Terry 263, 83 A.2d 96, 99 (1951).

The record shows the following: On July 12, 1967, Marta filed with the Board of Adjustment a detailed subdivision plot plan for the proposed apartment complex as prepared by his consulting engineers, and requested a public hearing thereon under Section 501(d). A public hearing to be held before the Board on August 21, 1967 was duly publicized by newspaper advertisement and direct notice by mail to certain neighboring property owners.

The record further shows the following: At the hearing, presided over by the Mayor and attended by one other of the three-person Board, the proposed project, as shown by a revised plot plan then being presented, was explained in detail by Marta's attorney, with emphasis upon matters such as open space, water, drainage, parking, ingress and egress. It was explained that the initial plan had been revised as to certain of such matters, after consultation between the developer's engineers and the City Planning Office. A representative of the consultant engineers was in attendance at the hearing to answer any questions of the Board or the public, as was Marta and his real estate agent. The Mayor asked a series of questions, including inquiries as to apartments below ground level, ratio of buildings to open space, density of families per acre, cost per unit, access, and community recreation facilities. The consulting engineer responded to these inquiries. Five neighboring property owners then spoke in opposition to the apartments and several petitions with numerous signatures were filed in protest. The main grounds of the opposition were the general desirability of a single family residential area, possible adverse effect on residential property values, possible drainage problems and increased traffic.

---

1. The pertinent parts of the Newark Zoning Ordinance are as follows:

    "*Section 501. Use Regulations.* No building shall be erected, altered or used [in a Residential 'RD' District] except for the following uses:

    \* \* \* \* \*

    "(d) Multiple dwelling, provided the minimum open area on the lot is equal to one thousand six hundred (1600) square feet per family, when authorized by the Board of Adjustment after public hearing.

    "When the immediate neighborhood is more than 50% developed, approval of 75% of the residents within a radius of one-eighth mile of the land in question must be secured."

The statements of the protestants were expressions of lay opinions only; there was no expert opinion evidence introduced to support the objections. The realtor associated with Marta spoke in support of the project and in rebuttal to the protestants, stating that the area involved was not developing as rapidly as others for residential usage; that there was a public need for apartment facilities in suitable locations with adequate open spaces; that a well-planned and well-executed apartment complex did not reduce the desirability of the neighborhood for single family residences; that the approaches to the area from the city included certain industrial plants.

The record further shows that the Board deferred decision after all present were given full opportunity to be heard. Thereafter, the Board had before it a letter memorandum from the consulting engineers confirming their position as to the absence of a drainage problem. The Board also had before it a memorandum containing the "strong recommendation" in favor of the project made by its consultant, the City Planner, after a detailed discussion of the general desirability of a well-planned apartment project, the street system traffic capacity, the water and sewer line availability, the suitability of the topography, the size of the parcel, compatibility with existing and planned furture devolpment in the area, and other considerations.

Finally, the record shows that on September 11, 1967, the entire Board of Adjustment met again on the subject and, upon the record thus made, decided unanimously to approve the Marta application.

■ Manifestly, there was ample evidence to support the Board's decision, and exercise of discretion, to grant permission for the apartment project. Compare Cooch's Bridge Civic Ass'n v. Pencader Corp., Del.Sup., 254 A.2d 608 (1969); Rollins Broadcasting of Delaware, Inc. v. Hollingsworth, Del.Sup., 248 A.2d 143 (1968). When there is sufficient evidence to warrant the Board's action, the Court will not substitute its judgment for that of the Board. Searles v. Darling, 7 Terry 263, 83 A.2d 96, 99 (1951). We agree, therefore, with the conclusion reached by the Superior Court on this issue.

The appellants seek to raise other questions on this appeal, all of which are either untenable or untimely:

■ It is contended that our prior decision in Marta v. Sullivan, Del.Sup., 248 A.2d 608 (1968) declared Section 501(d) unconstitutional and invalid; that, therefore, the provision therein vesting in the Board the power to authorize multiple dwellings is unconstitutional and invalid. This contention is without merit. Our prior decision declared invalid only the "50% rule" portion of Section 501(d); the portion of the Section empowering the Board to permit multiple dwellings was not involved in the earlier appeal. The two portions of the Section are separable by virtue of Section 1714 of the Newark Zoning Ordinance stating that if any provision of the Ordinance is adjudged invalid, such adjudication shall apply to that provision only. The portion of Section 501(d) remaining after invalidation of the "50% rule" is reasonable and operative and may stand alone.

■ The appellants also urge on this appeal that there must be a reversal of the Superior Court and the Board because Marta was not the legal owner of the proposed apartment site and, therefore, did not have the standing either to seek the zoning change before the Board or to intervene in the initial certiorari proceedings before the Superior Court. The record does not show any objection by the appellants to Marta's standing before the Board on this ground. Objection was made to Marta's application for leave to intervene in the initial Superior Court proceedings. But

the final judgment of the Superior Court in that proceeding was entered on March 27, 1968 and only Marta appealed that judgment. The appellants failed to take a timely appeal from the ruling or the judgment. See 248 A.2d 608, 611 (f. n. 4).[2]

■ It thus appears that the matter of Marta's standing and intervention was not made reviewable in ·the first appeal and comes too late now to be reviewable on this appeal.

■ Similar disposition must be made of the remaining contentions of the appellants: lack of adherence to the comprehensive development plan and lack of fair hearing before the Board. Both of these points were ruled upon by the Superior Court in the initial proceedings before that Court. Since the present appellants did not perfect an appeal from the judgment of March 27, 1968 which concluded those proceedings, this appeal may not be made the vehicle of a belated review of questions that should have been raised by proper appeal in the first review proceedings.

This Court and the Superior Court have been cognizant of the fact that the appellants have litigated this matter throughout without legal counsel; and in the interest of fairness, extraordinary patience and courtesy have been extended by both Courts to the appellants. But fairness to the party represented by counsel is of equal importance; and that fairness does not permit any further relaxation of established rules of procedure or further undue prolongation of this litigation. Compare our gratuitous rulings in the first appeal at 248 A.2d 611, 612.

Affirmed.

2. Also to be noted is that on August 20, 1968, the appellants filed in the first appeal, taken by Marta, a paper entitled "Motion to vacate and to set aside leave to intervene." This could not be deemed to be an appeal from the

intervention ruling made on November 24, 1967 or from the judgment of March 27, 1968 of which the intervention ruling was a component. The 60 day appeal period prescribed by our Rule 23, Del. C.Ann. and 10 Del.C. § 148 governed.