**Al SCHWEIZER and, Sal Sedita, Petitioners Below–Appellants,**

v.

**BOARD OF ADJUSTMENT OF the CITY OF NEWARK, Delaware, Respondent Below–Appellee.**

**No. 165, 2009.**

Supreme Court of Delaware.

Submitted: July 10, 2009.
Decided: Aug. 21, 2009.

---

20. *Id.*

Mark D. Sisk, Esquire, of Conaty, Curran & Sisk, Newark, DE, for appellants.

Roger A. Akin, Esquire, City Solicitor, City of Newark, DE, for appellee.

Before STEELE, Chief Justice, BERGER, and RIDGELY, Justices.

RIDGELY, Justice:

This appeal arises out of two decisions by the Board of Adjustment of the City of Newark (the "Board"). The first decision upheld the City of Newark Building Department's eviction of the Pi Kappa Alpha fraternity ("PiKA") from its off-campus fraternity house after the University of Delaware suspended the fraternity. The second decision upheld the termination of the grandfathered, nonconforming, pre-existing fraternity use of the property, so as to preclude the use of the premises as a fraternity. Petitioner–Appellants Al Schweizer and Sal Sedita, owners of the property, filed a petition for a writ of *certiorari* in the Superior Court seeking review of the Board's decisions. Appellants now appeal the Superior Court's denial of their petitions.

Appellants raise four arguments on appeal. First, they contend that Section 32–51(b) of the Newark Zoning Code constitutes an unlawful delegation of legislative authority by the City of Newark to the University of Delaware. Second, they contend that, as a result of the unlawful delegation, they were denied substantive and procedural due process. Third, they contend that Section 32–51(b) requires that a University of Delaware fraternity be suspended by both the University *and* its national organization in order for the non-conforming use to be terminated. In the alternative, Appellants contend that their lease of the property to a new fraternity within one year preserved their non-conforming use. We find no merit to their arguments and affirm.

### I. Facts and Procedural History[1]

Appellants own real property in the City of Newark (the "City") located at 155 South Chapel Street. Prior to 2005, the property was leased to Delta Eta Corporation, which in turn allowed the local chapter of PiKA at the University of Delaware (the "University") to use the premises as a fraternity house, and leased rooms to student members of PiKA. Many, if not all, fraternities at the University possess charters from national fraternities, and PiKA is no exception. However, the possession of a charter from a national organization does not, by itself, allow a group of students to conduct itself as a fraternity. Rather the University has reserved for itself the final say as to which groups may do so.

In July 2005, the University suspended PiKA for a period of four years for violating University rules of conduct. The Uni-versity conducted a hearing before suspending PiKA, at which time its members were permitted to appear before the University's tribunal. It is undisputed that Appellants, who own the property occupied by PiKA, did not participate in the hearing.

The University's suspension of PiKA's privilege to operate as a fraternity has significant repercussions to the zoning of Appellants' property. Several years ago, the City revised its zoning code to prohibit fraternities and sororities in residential areas within the city limits. Existing fraternity and sorority houses, including PiKA, became non-conforming uses which were allowed under the code to continue so long as the fraternity's or sorority's privileges were not revoked by the University for more than a year. Section 32–51(b) of the Newark Zoning Code provides that a fraternity that is suspended by the University for a period of more than one year "shall vacate the building" and that building's use as a fraternity "shall be terminated immediately upon such University suspension." [2]

Upon receiving notice of the suspension of PiKA's privileges, the City Building Department directed PiKA to vacate the premises and advised Appellants that the use of the property as a fraternity or sorority house was now banned by the Newark Zoning Code. Appellants appealed to the Board, which, after a lengthy hearing taking place on four different dates, upheld that decision. Appellants sought a writ of *certiorari* from the Superior Court. Initially, the court dismissed the petition for failure to raise a question of illegality as required by 22 *Del. C.* § 328. We reversed that judgment and remanded.[3]

---

1. The facts are summarized from the Superior Court decision. *Schweizer v. Bd. of Adjustment,* 2009 WL 597630 (Mar. 1, 2009) [hereinafter *Superior Court Decision*].

2. Newark C. § 32–51(b).

3. *Schweizer v. Bd. of Adjustment,* 930 A.2d 929 (2007) (Table).

Meanwhile, Appellants entered into a lease with Alpha Beta Alumni Corp. which, in turn, allowed members of Kappa Delta Rho fraternity to occupy the premises. In a separate hearing, Appellants contended before the Board that the occupancy of their property by Kappa Delta Rho preserves the non-conforming use status of that premises. The Board rejected that contention, and Appellants filed a second petition for a writ of *certiorari*. Because both of Appellants' pending petitions involved common issues of law, they were consolidated. After reviewing the merits of the petitions, the Superior Court found that: (1) Section 32–51(b) did not delegate any legislative function to the University; (2) Appellants were not denied due process of law; (3) Section 32–51(b) did not require suspension by a national organization; and (4) the subsequent lease of the property for use of the premises by another fraternity did not preserve the non-conforming use. This appeal followed.

## II. Discussion

 "A writ of *certiorari* is *not* a substitute for, or the functional equivalent of, an appeal."[4] Review on *certiorari* is on the record and the reviewing court may not weigh the evidence or review the lower tribunal's factual findings.[5] "The reviewing court does not consider the case on the merits; rather it considers whether the lower tribunal exceeded its jurisdiction, committed errors of law, or proceeded irregularly." Appellants do not contend

that the Board exceeded its jurisdiction or that it proceeded irregularly; therefore, the only issue for this Court to determine is whether the Board committed errors of law. This Court will reverse a decision of the Board for an error of law "when the record affirmatively shows that the lower tribunal has 'proceeded illegally or manifestly contrary to law.'"[6]

## A. Section 32–51(b) does not unlawfully delegate the City's legislative function.

 Appellants contend that Section 32–51(b) of the Newark Zoning Code unlawfully delegates the City's legislative function to the University. Appellants argue that Section 32–51(b) "essentially gives the University power to decide who can and cannot operate a fraternity on property within the City of Newark," and assert that this amounts to an unlawful delegation of the City's legislative powers. Section 32–51(b) provides:

> Whenever a nonconforming use has been discontinued for a period of one year, such use shall not thereafter be re-established, and any further use shall be in conformity with the provisions of this chapter, except that when such discontinuance is on account of any cause beyond the control of the owner, or tenant, the period of abandonment shall for the purpose of this chapter date from the termination of such cause.

> A fraternity or sorority, however, that is suspended by the University of Dela-

---

**4.** *Maddrey v. Justice of the Peace Court 13,* 956 A.2d 1204, 1213 (Del.2008) ("Review on a writ of *certiorari* issued by the Superior Court differs fundamentally from appellate review because 'review on *certiorari* is on the record and the reviewing court may not weigh evidence or review the lower tribunal's factual findings.'").

**5.** *Maddrey,* 956 A.2d at 1213 (quoting *Christiana Town Ctr., LLC v. New Castle County,*

2004 WL 2921830, at *2 (Del. Dec. 16, 2004)); *accord Reise v. Bd. of Bldg.App.,* 746 A.2d 271, 274 (Del.2000); *Shoemaker v. State,* 375 A.2d 431, 437 (Del.1977); *DuPont v. Family Ct. for New Castle County,* 153 A.2d 189, 194 (Del. 1959).

**6.** *Christiana Town Ctr.,* 2004 WL 2921830, at *2 (citing 1 VICTOR B. WOOLLEY, DELAWARE PRACTICE § 939 (1906)).

ware so that it is no longer approved and/or sanctioned to operate as a fraternity or sorority for a period of more than one year shall vacate the building and the use as a fraternity or sorority shall be terminated immediately upon such University suspension.[7]

■ In *Marta v. Sullivan*,[8] we explained that "[a] legislative body, such as the City Council of Newark, may not lawfully delegate its legislative powers to others. This non-delegation principle is especially compelling when a zoning ordinance is involved, because such legislation regulates the right to the enjoyment of private property."[9] We further explained that "[t]he non-delegation rule does not require that all details of the administration of a law be spelled out. A legislative body may establish basic policy and vest in others the power to administer the declared legislative policy."[10] In order to avoid an unlawful delegation, "a statute must establish adequate standards and guidelines for the administration of the declared legislative policy and for the guidance and limitation of those in whom discretion has been vested; this to the end that there may be safeguards against arbitrary and capricious action, and to assure reasonable uniformity in the operation of the law."[11]

In *Marta*, we found an unlawful delegation of legislative function by the City of Newark when certain neighbors were permitted to exercise discretion under an ordinance, without adequate standards or guidelines as to legislative policy, by voting to approve or disapprove a proposed use for adjacent property. The ordinance in question would not permit the Board to authorize construction of an apartment building if the "immediate neighborhood" of the proposed development were 50% developed, and fewer than 75% of the residences within one-eighth of a mile of the planned development approved the construction.[12] We held that the ordinance failed to provide adequate standards to the neighbors to justify denial.[13] We said:

> It is beyond question, however, that the Ordinance purports to delegate to neighboring residents an uncontrolled and undefined power to impose a zoning restriction and to limit the use of the property of another. The neighbors are not required to express an objection or furnish any reason for withholding assent; and the Board is without power to authorize a usage, otherwise permitted by the Ordinance, even when no reasons for withholding assent is stated or when the objections as stated are unsupportable by good and valid reasons.

> As we have seen, to be valid, a zoning ordinance must provide a sufficient standard of administration; its application may not be left to the arbitrary or capricious will of any person or group of persons. Under the non-delegation rule, the City Council could not vest in the Board of Adjustment or any other municipal authority an uncontrolled zoning discretion. It follows that the Council may not delegate to neighbors such un-

---

7. Newark C. § 32–51(b).

8. 248 A.2d 608 (Del.1968).

9. *Id.* at 609.

10. *Id.*

11. *Id.*

12. *Id.* at 609.

13. *Id.* at 610. We declined to address the lack of standards and guidelines as to the undefined term "immediate neighborhood," which, we noted, was possibly a fatal delegation of legislative power, because there may be a reasonable difference of opinion on the subject. *Id.*

regulated power.[14]

■■ Unlike the ordinance at issue in *Marta,* Section 32–51(b) does not delegate any legislative function to the University. The establishment of residential zones and the permitted and prohibited uses in those districts (including prohibiting a fraternity or sorority use in an off-campus residential district) is the pertinent "legislative" action. The University decided only whether PiKA violated the University's rules on the conduct of fraternities and the appropriate sanction for any violation. Its decision to suspend PiKA was neither a legislative nor a zoning decision; rather, it was a quasi-judicial act within the power entrusted to the University by state law.[15] Although the University's decision may have zoning consequences, those collateral effects do not transform the University's quasi-judicial decision into an exercise of the City's legislative function. Accordingly, Section 32–51(b) does not amount to an unconstitutional delegation by the City of its legislative powers.

### B. Appellants were not deprived due process of law.

■ Appellants also contend that they were deprived of a property interest without due process of law guaranteed by the Fourteenth Amendment.[16] They assert that their right was abridged when the City enforced its zoning ordinance, terminating use of Appellants' property as a fraternity house based on PiKA's suspension by the University, and thereby diminishing the value of their property.

■ A landowner is entitled to substantive and procedural due process of law where a lawful land use may potentially be lost.[17] The fundamental requirement of

14. *Id.*

15. The University of Delaware is chartered by the General Assembly and draws its authority from 14 *Del. C.* § 5101 *et seq.* Section 5106 entrusts the Board of Trustees of the University with the "entire control and management of the affairs of the University." Section 5111 entrusts the faculty, including the University president, with the "care, control, government and instruction of the students...." The authority to regulate fraternities is clearly an implied power vested in the University. It is the duty of the University in the first instance to establish regulations "to govern the conduct of fraternities ... and to discipline those fraternities that fail to comply with those regulations...." *Marshall v. Univ. of Del.,* 1986 WL 11566, at *12 (Del.Super.Ct. Oct. 8, 1986).

The Newark Municipal Charter does not provide the City with authority to impose suspensions or other penalties on organizations which enroll University students. The City Charter, however, does provide the authority to zone City land which may house students, student organizations, and, in particular, fraternities. *See* Newark C. (Charter) §§ 201, 902.3. In a reasonable exercise of its police power, the Newark City Council has eliminated fraternities as a permitted land use. Because fraternities are not created nor licensed by the City, the City looks to the University, in a manner similar to a licensing board, to determine if a fraternity is in good standing. *See State v. Durham,* 191 A.2d 646, 649–50 (Del.Super.Ct.1963) (finding legislature did not delegate its legislative function, without adequate safeguards or standards, when it permitted a licensing board to determine an applicant's knowledge of required subjects and degree of skill in connection with the issuance of an engineering license); *see also State v. Chudnofsky,* 176 A.2d 605, 607 (Del.Super.Ct.1961) ("Although the Legislature cannot delegate the power to make a law, it can delegate the power to determine some facts upon which the law may depend.").

16. U.S. Const. amend. XIV. ("... No State shall ... deprive any person of life, liberty, or property, without due process of law....").

17. *See Goldberg v. Rehoboth Beach,* 565 A.2d 936, 942 (Del.Super.1989) (identifying elements of due process which may be required in a given situation: notice of government action, hearing before a neutral arbiter, opportunity to make an oral presentation and to present evidence, opportunity to question wit-

due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." [18] Appellants do not contest that they were afforded due process on the only issue pending before the Board: whether the University had suspended PiKA's privilege to act as a fraternity. Instead, they argue that due process was lacking because the "ultimate fate" of the property was determined in the University disciplinary proceedings; that they were never involved in the University's judicial process against PiKA; and that they should have been given an opportunity to argue before the Board that PiKA was not in violation of the University's regulations. We find no merit in this argument.

First, Appellants have failed to make a record which would support a conclusion that they were precluded from participating in the University's proceedings. As landlords, Appellants had a full opportunity to remain abreast of problems that might cause their tenants to be suspended by the University, and cause the non-conforming use to be terminated. Nothing in the record shows what attempts, if any, Appellants made to intercede in the University proceedings, or that such attempts, if made, would have been unsuccessful. On *certiorari* review, we cannot assume on the basis of a silent record that the University would have precluded Appellants from having their say in its proceedings.

More importantly, Appellants conceded before the Board that the University had the lawful authority to discipline fraternities, and that Board had no right or obligation to retry the University disciplinary

proceeding against PiKA. Indeed, it would make little sense to judicially create a system in which the University could ban a fraternity for violating the school's own code of conduct, and then have the Board overrule the University's decision in the guise of a zoning hearing.[19]

The records reflects that the University process leading to PiKA's suspension was the result of (1) a violation of the University's Code of Conduct; (2) action by the Office of Judicial Affairs; and (3) review by the University's Appellate Board. Appellants failed to alert the Board to any procedural irregularity in the University proceeding, and none is apparent on the record. Accordingly, we cannot conclude, on *certiorari* review, that Appellants were denied due process.

### C. Section 32–51(b) does not require suspension by a national organization.

■ Appellants next contend that Section 32–51(b) "creates confusion as to who may impose the suspension" of the fraternity that triggers the termination of the non-conforming use, and implies that not only the University, but also a national fraternal organization, must suspend the fraternity in order to invoke the provisions of the ordinance. We disagree.

The ordinance provides: "[a] fraternity or sorority, however, *that is suspended by the University of Delaware* so that it is no longer approved and/or sanctioned to operate as a fraternity or sorority for a period of more than one year shall vacate the building and the use as a fraternity or sorority shall be terminated immediately *upon such University suspension.*" Ap-

---

nesses, the right to be represented by counsel, and a decision based on the record).

**18.** *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

**19.** To borrow the Superior Court's example, it is within the purview of the University to

suspend fraternities which fail to meet minimum academic standards; however, the members of the Board, who are not required to be educators, in all likelihood lack the tools necessary to determine when a fraternities academic performance is inadequate.

pellants point to the language that provides "so that it is no longer approved and/or sanctioned to operate as a fraternity ..." and assert that by applying normal principles of statutory construction, this language requires that PiKA be suspended by its national organization before the ordinance applies.

By its plain language, Section 32–51(b) is only concerned with action by the University. If PiKA receives a multi-year suspension from the University, no further action is required by any other organization before the suspension has legal effect either on or off-campus. The remainder of the ordinance precludes any other interpretation, as it concludes by stating "shall be terminated immediately *upon such University suspension.*" The reference to "University suspension" and the absence of any reference to suspension by a national organization is a clear indication that suspension by the University alone triggers Section 32–51(b).

Even if we were to construe the ordinance as proposed by Appellants as referring to sanctioning by PiKA's national organization, that would not alter the outcome here. Under that construction, the termination of the use would still be triggered by suspension by the University *or* by the national organization. Because PiKA was suspended by the University for more than one year, Section 32–51(b) applies.

D. Section 32–51(b) does not permit Appellants to continue to use the property as a fraternity house.

 Alternatively, Appellants contend that their lease of the property to a new fraternity within one year preserved their non-conforming use. They argue that, generally, in zoning law, "grandfathering" permits the continuance of a nonconforming use so long as the use is not abandoned during a particular time period, and that the Newark Zoning Code provides that this time period is one year. While Appellants are correct that, in some instances, the Newark Code preserves a discontinued non-conforming use if that use is revived within one year, the ordinance in question expressly provides a different rule for fraternities and sororities.[20] Section 32–51(b) provides that, when "[a] fraternity ... is suspended by the University ... for a period of more than one year[,] shall vacate the building *and the use as a fraternity or sorority shall be terminated immediately* upon such University suspension."[21] Accordingly, pursuant to Section 32–51(b), the nonconforming use of the property as a fraternity house expired immediately upon the University's suspension of PiKA. The subsequent lease of the property to another fraternity within a year did not, as a matter of law, operate to preserve the nonconforming use.

### III. Conclusion

The judgment of the Superior Court is **AFFIRMED.**

---

**20.** *See* Newark C. § 32–15(b). The first paragraph of Section 32–15(b) provides that whenever "a nonconforming use has been discontinued for a period of one year, such use shall not thereafter be reestablished." However, the second paragraph of Section 32–51(b), which applies to fraternities and sororities, provides that upon the University's suspension of a fraternity "the use as a fraternity ... shall be terminated *immediately.*"

**21.** Newark C. § 32–15(b) (emphasis added).