# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DELTA ETA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-1106-MTZ |
| | ) | |
| CITY OF NEWARK, a municipal corporation of the State of Delaware, and MAYOR & COUNCIL of the City of Newark, JERRY CLIFTON, JOHN SUCHANEC, and JAY BANCROFT, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: September 9, 2022
Date Decided: February 2, 2023

Richard L. Abbott, ABBOTT LAW FIRM, Wilmington, Delaware, *Attorney for Plaintiff Delta Eta Corporation.*

Max B. Walton, Lauren P. DeLuca, and Erica K. Sefton, CONNOLLY GALLAGHER LLP, Wilmington, Delaware, *Attorneys for Defendants City of Newark, Mayor & Council of the City of Newark, Jerry Clifton, John Suchanec, and Jay Bancroft.*

**ZURN, Vice Chancellor.**

A fraternity chapter's housing corporation owns a residence in the City of Newark. In August 2021, the housing corporation applied for a special use permit[1] that would allow the residence to be used as the chapter's fraternity house. The housing corporation obtained a favorable recommendation from the city's planning and development department and proceeded to a hearing before the city council. After the hearing, three city council members voted in favor of approving the special use permit, and three voted against. Because the housing corporation needed a majority vote to receive the permit, the permit application was not approved.

The housing corporation sued in this Court, seeking to compel the city council to issue the permit and prevent the council from relying on its denial. The housing corporation contends the city council did not comply with the applicable municipal zoning ordinance, and that the council members who voted against the permit exhibited anti-fraternity biases and failed to articulate sufficient reasons to support their votes. The housing corporation also brought a claim under 42 U.S.C. § 1983 ("Section 1983"), asserting a violation of a right of intimate association with the fraternity chapter and seeking injunctive relief.

---

[1] The terms "special use permit" and "conditional use permit" are generally synonymous. *See* 2 Patricia E. Salkin, *American Law of Zoning* § 14:1 (5th ed. 2008) ("The terms 'special use permit,' 'special exception,' 'development permit,' and 'conditional use permit' are often used interchangeably."). The City of Newark municipal code uses the term "special use permit," so I use that term throughout this decision.

The defendants moved to dismiss the complaint for lack of subject matter jurisdiction. This opinion concludes the Court lacks subject matter jurisdiction over the claims directly challenging the denial of the special use permit application. Contrary to the housing corporation's assertions, this Court does not have subject matter jurisdiction over all cases involving zoning or all cases addressing special use permit decisions. And careful examination of the housing corporation's allegations reveals that the city council acted in a quasi-judicial capacity when it denied the special use permit, and so a writ of certiorari in our sister courts of law is available and affords an adequate remedy. It follows that this Court of equity lacks subject matter jurisdiction over the housing corporation's state law claims.

Additionally, as to the Section 1983 claim, the complaint adequately pleads only that the housing corporation was the fraternity members' prospective landlord. That relationship is not protected by our Constitution's right to intimate association and cannot form the basis of a Section 1983 claim. The housing corporation failed to plead any injury and therefore its Section 1983 claim is dismissed.

Finally, the housing corporation also moved for sanctions on the basis that the defendants' arguments were legally frivolous. As it turns out, they were not. The housing corporation's motion for sanctions is denied.

## I. BACKGROUND[2]

Nonparty Pi Kappa Alpha is a national fraternity with a chapter at the University of Delaware. This opinion refers to that chapter as "PiKA." Plaintiff Delta Eta Corporation ("Delta Eta") is a not-for-profit organization and "the housing corporation for [PiKA]."[3] Delta Eta owns property located within the city limits of Newark, Delaware, which is improved with a residence (the "House"). It desired to use the House "as a fraternity house and related facilities starting in Fall 2022."[4] The property was, and still may be, used as a treatment facility.

---

[2] The facts are drawn from Delta Eta's Amended Verified Complaint, the documents integral to it, and those incorporated by reference. *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004). This includes the Newark City Council's meeting minutes and the report submitted by Newark's Planning and Development Department. Delta Eta objects to the Court's consideration of an unspecified document, arguing that the Court can consider only the allegations in its Amended Verified Complaint and documents that are attached or referred to in the that complaint. D.I. 33, at 21, 39 [hereinafter "Ans. Br."]. The best I can tell, Delta Eta is referring to the city council's meeting minutes from the hearing concerning its special use permit application. Many of the quotes appearing in the Amended Verified Complaint could be from either the hearing transcript or the meeting minutes, as they appear verbatim in both. *Compare, e.g.*, D.I. 24 ¶ 31 [hereinafter "Am. Compl."] (quoting city council members' stated reasons for voting against the special use permit application), *with* D.I. 25 [hereinafter "Op. Br."], Ex. B at 24 [hereinafter "City Council Minutes"].

I also take judicial notice of the City of Newark's municipal code and its charter. D.R.E. 202(d)(1) ("The court may, without request by a party, take judicial notice of . . . the duly enacted ordinances and duly published regulations and determinations of governmental subdivisions or agencies . . . of this State . . . .").

[3] Am. Compl. ¶¶ 1, 14.

[4] *Id.* ¶ 17.

4

The City of Newark (the "City") is zoned at the municipal level.[5] Property within the City is divided up into districts, including different types of residential, business, and industrial districts.[6] The Code of the City of Newark (the "City Code") provides a list of acceptable uses for each type of district, and property generally may only be used for those specified uses.[7] The House is zoned RM, which allows for multi-family dwellings, including boarding houses and garden apartments.[8]

The City Code also provides for the issuance of special use permits for certain uses depending on the district.[9] The City Council may issue special use permits only for those special uses enumerated for each type of district.[10] Fraternity houses are an enumerated special use for RM districts.[11] The City Code defines a "fraternity and/or sorority house" as

---

[5] *See* Newark C. § 32-5 [hereinafter "City Code"].

[6] *See id.*

[7] *See, e.g.*, *id.* § 32-11(a) (specifying twenty-four acceptable uses of property in districts zoned "RM," and stating that "no building or premises shall be used and no building shall be erected or altered which is arranged, intended, or designed to be used, except for one or more" of those uses).

[8] *Id.* § 32-11(a)(1) (allowing property in districts zoned RM to be used as garden apartments); *id.* § 32-11(a)(3) (allowing property in districts zoned RM to be used as boarding houses).

[9] *See, e.g.*, *id.* § 32-11(b); *see also id.* § 32-78(a) (setting forth requirements for granting special use permits).

[10] *See, e.g.*, *id* § 32-11(b) (enumerating permitted special uses).

[11] *Id.* § 32-11(b)(14).

dwelling units used exclusively by a society of either male or female university or college students having a Greek letter name or other designation and sharing common or professional interests, and with the appropriate approval and/or sanction from the University of Delaware or a sponsoring national fraternal organization to operate as a fraternity or sorority.[12]

The City Council determines which applicants are entitled to receive special use permits by applying the criteria set forth in the City Code.[13] Specifically, before issuing a special use permit, the City Council must hold "a duly advertised hearing," and the applicant must demonstrate that the special use will not:

a. Affect adversely the health or safety of person(s) residing or working within the City of Newark boundaries or within one mile of the City of Newark boundaries and within the State of Delaware;

b. Be detrimental to the public welfare or injurious to property or improvements within the City of Newark boundaries or within one mile of the City of Newark boundaries and within the State of Delaware; and

c. Be in conflict with the purposes of the comprehensive development plan of the city.[14]

The City Code provides that "[i]n granting a special use permit the [City Council] shall designate such conditions in connections therewith as will, in its opinion, assure that the use will conform to the foregoing requirements and that such use will continue to do so."[15] When considering whether to grant a fraternity house special

---

[12] *Id.*

[13] *See id.* § 32-78(a).

[14] *Id.* § 32-78(a)(1).

[15] *Id.* § 32-78(a).

use permit, the City Code requires that the City Council "consider a written report prepared by the planning and development director, or the city manager's designee, in evaluating [the] special use permit request."[16]

### A. Delta Eta Applies For A Special Use Permit, And The City's Planning And Development Department Recommends That The City Council Grant It.

On August 3, 2021, Delta Eta applied for a special use permit to use the House as PiKA's fraternity house (the "Special Use Application"), which would allow Delta Eta to rent the House exclusively to PiKA members.[17]  Although Delta Eta applied for the permit, the permit itself would be held by PiKA and would not be transferable to any other fraternity or sorority.[18]

Delta Eta also applied for a separate rental permit "allowing 18-person occupancy, which it is entitled to as a matter of right."[19]  Delta Eta states that "[a] fraternity student residence only differs from a regular student residence in one respect:  assertion with a University recognized fraternity affiliated with a national fraternity organization—*i.e.* fraternity associational status."[20]

---

[16] *Id.* § 32-11(b)(14)(c).

[17] *See id.* § 32-11(b)(14).

[18] *See id.* § 32-11(b)(14)(e); D.I. 31, Ex. 2, Ex. A at 3 [hereinafter "Report"] (explaining that the permit would be held by PiKA, not Delta Eta).

[19] Am. Compl. ¶ 11.

[20] *Id.* ¶ 41.

The first step in evaluating a special use permit application to use property as a fraternity house is a review by the City's Planning and Development Department.[21] On September 1, the Planning and Development Department "issued a written report which conditionally recommended approval" of the Special Use Application (the "Report").[22] The Report stated that "the application for the [PiKA] fraternity at [the House] does, or can, meet all the requirements of the [applicable] ordinance."[23] The Report also provided:

> The City Solicitor emphasizes to Council that the permit holder will be [PiKA], and not the property owner (Delta Eta Corporation). If Council revokes or suspends the special use permit, then no fraternal organization will be allowed at this location unless a new permit is issued to a fraternal organization, or the suspension is lifted. The special use is for the specific fraternity to operate and reside at the [House]. Therefore, it is recommended that a condition of the special use permit clearly state that if [PiKA] vacates the premises at [the House] for any reason, and the owner (Delta Eta Corporation) wishes to lease to a different fraternity or sorority . . ., the fraternity or sorority must apply for new special use permit. Furthermore, if [PiKA] wishes to relocate or expand to a different property, [PiKA] must apply for a new special use permit.[24]

The Report further noted that the City Council would be able to "suspend the special use permit if [PiKA] violates the terms and conditions set by the Council,"[25] and that

---

[21] *See* City Code § 32-11(b)(14)(c); *see also id.* § 2-89(a).

[22] Am. Compl. ¶ 19; Report.

[23] Report at 3.

[24] *Id.*

[25] *Id.* at 4.

8

the City of Newark Police Department "does not support the expansion of fraternities and sororities into residential neighborhoods, and does not support the approval of [the Special Use Application]."[26] Nevertheless, the Report concluded: "the Planning and Development Department recommends that City Council approve the special use permit [PiKA] to operate and reside at [the House]."[27]

### B. The City Council Does Not Approve The Special Use Permit.

The next step in the life of a special use application is a hearing and vote by the City Council.[28] A majority vote is required to grant the permit.[29] The City Council held that hearing on October 25, 2021. During the hearing, the Report was discussed, and the Planning and Development Department verbally advised in favor of granting Delta Eta's special use permit. Several individuals spoke at the hearing, including Delta Eta's counsel and PiKA's president.[30]

Six City Council members were present during the hearing: Mayor Jerry Clifton, John Suchanec, Dr. Jay Bancroft, Dendolyn Creecy, Jason Lawhorn, and Deputy Mayor Travis McDermott.[31] Three members voted in favor of approving the

---

[26] *Id.*

[27] *Id.* at 5.

[28] *See* City Code § 32-11(b) (requiring hearing held in accordance with Section 32-78 prior to issuance of special use permits).

[29] Newark C. (Charter) art. III, § 312.

[30] City Council Minutes at 15–17.

[31] *Id.* at 1.

Special Use Application, and three—defendants Clifton, Suchanec, and Bancroft (together, the "Individual Defendants")—voted against it, so the Special Use Application was not approved. According to the meeting minutes, Bancroft "voted no because of detrimental actions, property values, and quality of life in the area;" Suchanec "voted no because he believed that the expansion of the fraternity into the City would negatively affect the quality of life to the surrounding residents and believed it would also impact the Police Department;" and Clifton "voted no based on the comments stated by Mr. Suchanec."[32]

### C. Litigation Ensues.

Delta Eta filed its original complaint in this action on December 22, 2021.[33] On April 28, 2022, it filed an amended complaint (the "Amended Complaint"), naming as defendants the City of Newark, "the Mayor & Council of the City of Newark," and the Individual Defendants (which are the Mayor and two other Council members) (collectively, the "Defendants").[34] The Amended Complaint asserts three counts against all Defendants on the basis that the Individual Defendants failed to articulate sufficient reasons for denying the Special Use Application and otherwise voted based on preconceived notions about fraternities.

---

[32] *Id.* at 24.

[33] D.I. 1.

[34] Am. Compl.

Count I requests a permanent injunction (1) to "prohibit the City and Mayor & Council from relying on the Special Use Denial based upon its invalidity as a matter of law"; and (2) "mandating that the [Special Use] Application be approved since it met all applicable Zoning Code criteria."[35] Count II seeks a declaratory judgment that (1) "the Special Use Denial is invalid"; and (2) "Delta Eta is entitled to approval of the Application and issuance of the Special Use Permit as a matter of law."[36] Count III asserts a Section 1983 claim for violations of Delta Eta's right of freedom of association with PiKA.[37]

On May 10, 2022, Defendants filed a motion to dismiss pursuant to Court of Chancery Rules 12(b)(1) and 12(b)(6), asserting the Court lacks subject matter jurisdiction over Delta Eta's state law claim claims, that Delta Eta lacks standing to bring its claims, that Delta Eta has failed to state a Section 1983 claim, and that the Section 1983 claim fails because the Individual Defendants have quasi-judicial immunity.[38] Delta Eta first responded with a June 7 motion for sanctions under Court of Chancery Rule 11, asserting that Defendants' standing and subject matter

---

[35] *Id.* ¶ 60.

[36] *Id.* ¶ 63.

[37] *Id.* ¶¶ 64–68.

[38] Op. Br.

11

jurisdiction arguments are legally frivolous.[39]  It filed its opposition to the motion to dismiss on June 10.[40]

The parties briefed both motions.[41]  I heard oral argument on September 2,[42] Delta Eta and Defendants filed sur-replies on September 7 and September 8, respectively,[43] and Delta Eta filed a second sur-reply on September 9.[44]

## II.    ANALYSIS

This opinion concludes that the Court lacks subject matter jurisdiction over Delta Eta's state law claims:  Delta Eta's request for an injunction falls short of invoking this Court's equitable jurisdiction both because it has not sufficiently pled the need for an injunction, and because a writ of certiorari provides an adequate remedy at law.  Delta Eta has failed to plead a constitutionally protected relationship with PiKA or its members, so its Section 1983 claim is dismissed.  Defendants prevailed; their arguments were not frivolous, and so Delta Eta's Rule 11 motion is denied.

---

[39] D.I. 29.

[40] Ans. Br.

[41] D.I. 31; D.I. 35.

[42] D.I. 40; D.I. 44.

[43] D.I. 41; D.I. 42.

[44] D.I. 43.  Because the sur-replies were filed without leave, I do not consider them in adjudicating the motions before me.  *See* Ct. Ch. R. 171(a) ("Unless otherwise ordered, no additional briefs or letters containing argument shall be filed without first procuring Court approval.").

### A. This Court Lacks Subject Matter Jurisdiction Over Counts I and II.

"This Court will dismiss an action under Rule 12(b)(1) if the record, which may include evidence outside of the pleadings, indicates that the Court does not have subject matter jurisdiction over the plaintiff's claim."[45] "When considering a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, I must take the allegations in the complaint as true and construe all reasonable inferences in the non-movant's favor."[46] "The burden of establishing the Court's subject matter jurisdiction rests with the party seeking the Court's intervention."[47]

Defendants have moved to dismiss on the basis that this Court lacks subject matter jurisdiction. They argue that the City Council acted in a quasi-judicial capacity in denying the Special Use Application, and so a writ of certiorari is an available and adequate remedy at law.

Delta Eta's response appears to make two different arguments, both of which expressly rely on the premise that there is no meaningful legal distinction between zoning decisions and special use permit decisions. First, it argues that "[t]his Court has exercised jurisdiction over actions of this sort over the past 60+ years," which,

---

[45] *K&K Screw Prod., L.L.C. v. Emerick Cap. Invs., Inc.*, 2011 WL 3505354, at \*6 (Del. Ch. Aug. 9, 2011).

[46] *Schwaber v. Margalit*, 2022 WL 2719952, at \*2 (Del. Ch. July 13, 2022).

[47] *Ropp v. King*, 2007 WL 2198771, at \*2 (Del. Ch. July 25, 2007).

to Delta Eta, either evidences or dictates that this Court has jurisdiction over all challenges to zoning decisions.[48] Second, Delta Eta contends that this Court has subject matter jurisdiction over any case relating to zoning that seeks injunctive relief.[49] This argument is based on Delta Eta's theory that the Court of Chancery and the Superior Court share concurrent jurisdiction over zoning disputes, and that a plaintiff can choose to litigate in this Court through the mere request for injunctive relief.[50]

Both arguments evince a misunderstanding of the limitations on this Court's jurisdiction. It is true that this Court has exercised subject matter jurisdiction over cases arising from zoning decisions[51] as well as the approval or denial of special use permit applications.[52] While pointing to cases in which this Court has exercised its

---

[48] Ans. Br. at 28–29; *id.* at 29 ("The correct analytical methodology is to look at the nature of the case – a zoning decision challenge - [sic] to determine whether this Court possesses jurisdiction."); *id.* at 31 ("All that matters is that it is a zoning decision and that this Court has taken cognizance over challenges to such decisions for decades on end."). As support, it cites what it describes as "[t]hirty-nine (39) decisions . . . [that] show that this Court has historically exercised jurisdiction over zoning cases like this action." *Id.* at 33; *id.* at Ex. B (citing thirty-nine decisions).

[49] Ans. Br. at 29 ("This Court has not exercised jurisdiction over zoning decisions because they are made in a legislative capacity versus a *quasi*-judicial capacity. It takes jurisdiction over zoning cases which request injunctive relief – period, end of analysis.").

[50] *Id.* at 35 ("This Court and the Superior Court have concurrent jurisdiction over actions of this sort.").

[51] *See, e.g., Citizens' Coal., Inc. v. Sussex Cnty. Council*, 2004 WL 1043726 (Del. Ch. Apr. 30, 2004).

[52] *See, e.g., Coker v. Kent Cnty. Levy Ct.*, 2008 WL 5451337 (Del. Ch. Dec. 23, 2008); *Gibson v. Sussex Cnty. Council*, 877 A.2d 54 (Del. Ch. 2005).

jurisdiction over a similar case may be a helpful starting point,[53] it is not dispositive or the end of the analysis, particularly where those cases did not contain explicit analyses of whether or why the Court had subject matter jurisdiction over the claim. This is because "[e]quitable jurisdiction is a predicate issue for every matter in this court of limited jurisdiction."[54]

This Court must conclude that a plaintiff's claim falls into one of three buckets in order to exercise subject matter jurisdiction. "First, jurisdiction exists if a plaintiff states an equitable claim. Second, jurisdiction exists if a plaintiff requests equitable relief and there is no adequate remedy at law. Third, jurisdiction exists by statute."[55] If any of the plaintiff's claims falls into one of these categories, the Court may choose to exercise its equitable clean-up jurisdiction over the remaining claims, even if it would not otherwise have jurisdiction over those claims.[56] A bucket-by-bucket analysis of Delta Eta's state law claims reveals that this Court lacks subject matter jurisdiction over them, notwithstanding its request for injunctive relief.

---

[53] *See, e.g.*, *Lynch v. City of Rehoboth*, 2004 WL 1152270, at *2 (Del. Ch. May 17, 2004).

[54] *Preston Hollow Cap. LLC v. Nuveen LLC*, 216 A.3d 1, 9 (Del. Ch. 2019).

[55] *Delawareans for Educ. Opportunity v. Carney*, 2018 WL 4849935, at *5 (Del. Ch. Oct. 5, 2018) (footnotes omitted)).

[56] *See id.*

### 1. This Court Does Not Have Statutory Jurisdiction Over Delta Eta's State Law Claims Seeking Injunctive And Declaratory Relief.

The first bucket is statutory. The General Assembly has enacted various statutes conferring jurisdiction on this Court for a range of matters.[57] Where such a statute governs the claim at issue, this Court may exercise jurisdiction even where the plaintiff is seeking only damages or some other legal remedy.[58] Delta Eta has not pointed to any statute conferring on this Court jurisdiction over special use permit approvals or denials of zoning decisions by municipal councils, and the Court is aware of none.[59]

### 2. Delta Eta's State Law Claims Do Not Assert Equitable Rights.

The second method of invoking this Court's jurisdiction is by asserting an equitable right, which is "a right of purely equitable origin that was not traditionally

---

[57] Among the more familiar statutes are 8 *Del. C.* § 111 and 8 *Del. C.* § 220. But there are many others. *See, e.g.*, 10 *Del. C.* § 348 (disputes involving deed covenants or restrictions); 5 *Del. C.* § 139 (appeals from state Bank Commissioner orders); 12 *Del. C.* § 1167 (appeals from Tax Appeal Board decisions); 16 *Del. C.* § 4102 (appeals from Department of Agriculture "definitions and standards of identify for frozen desserts" and "regulations for the labeling of any frozen desserts," among other things).

[58] *See, e.g.*, *S'holder Representative Servs. LLC v. DC Cap. P'rs Fund II, L.P.*, 2022 WL 439011 (Del. Ch. Feb. 14, 2022) (exercising subject matter jurisdiction over a breach of contract claim seeking monetary damages).

[59] To be sure, there are statutes that touch on related matters. For example, a statute grants this Court jurisdiction "on petition of the [municipal] planning commission established hereunder to enforce this chapter and any ordinance or bylaws made thereunder and may restrain by injunction violations thereof." 22 *Del. C.* § 710. But that statute does not grant jurisdiction over claims by applicants.

16

recognized at common law."[60]  Among such rights are "fiduciary rights and obligations arising in the context of trusts, corporations, guardianships, and the administration of estates."[61]  Jurisdiction over equitable rights is enumerated in 10 *Del. C.* § 341, which states that "[t]he Court of Chancery shall have jurisdiction to hear and determine all matters and causes in equity."[62]  The availability of an adequate remedy at law is irrelevant to the Court's subject matter jurisdiction over claims enforcing equitable rights.[63]  In other words, the focus is on the right being enforced, not on the remedy being sought.

A party challenging a zoning decision is seeking to enforce rights arising from statute.  The General Assembly statutorily delegated the legislative authority to enact zoning ordinances to counties, which in turn may zone only through ordinances,[64]

---

[60] Donald Wolfe & Michael Pittenger, Corporate and Commercial Practice in the Delaware Court of Chancery § 2.03[b][1], at 2-23 to -24 (2d ed. 2022) [hereinafter "Wolfe & Pittenger"].

[61] *Id.* § 2.03[b][1], at 2-24.

[62] 10 *Del. C.* § 341.

[63] *Jacobson v. Ronsdorf*, 2005 WL 29881, at *3 (Del. Ch. Jan. 6, 2005) ("When the action involves a claim for relief predicated on a cause of action arising only in equity, it is without dispute that this court has jurisdiction and the court need not inquire into whether the plaintiff lacks an adequate remedy at law.").

[64] 9 *Del. C.* § 1153(a) (New Castle County); 9 *Del. C.* § 4110(h) (Kent County) ("All actions of the county government which shall have the force of law shall be by ordinance."); 9 *Del. C.* § 7002(l) (Sussex County) (same); *see also Conner v. Shellburne, Inc.*, 281 A.2d 608, 609 (Del. 1971) ("It is required that all zoning changes be made by the [New Castle] County Council by ordinance."); *Green v. Cnty. Council of Sussex Cnty.*, 415 A.2d 481, 483 (Del. Ch. 1980) ("A rezoning has the force of law.").

and to municipalities.[65]  Those zoning ordinances may provide for special uses, which are typically considered consistent with and part of the applicable zoning ordinance.[66]  Generally, cases involving special use permit applications raise challenges as to whether the approval or denial complied with the applicable ordinance or the delegating statutes, including whether an adequate record exists to demonstrate compliance with those laws.[67]  Claims to enforce such legislative or statutory rights are legal in nature, not equitable.[68]

So too here.  Delta Eta argues that the Special Use Application satisfied the criteria set forth in the City Code and that those who voted against it relied on considerations falling outside the City Code's parameters.  The rights asserted by Delta Eta arise by ordinance, and ultimately by statute.  Thus, Delta Eta's claims are legal, not equitable.[69]  This Court does not have inherent or exclusive equitable jurisdiction over Delta Eta's state law claims.

---

[65] 22 *Del. C.* § 301.

[66] *See Steen v. Cnty. Council of Sussex Cnty.*, 576 A.2d 642, 646 (Del. Ch. 1989).

[67] *See, e.g.*, *Tidewater Utils., Inc. v. Sussex Cnty. Council*, 1986 WL 10082 (Del. Ch. Sept. 17, 1986).

[68] *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 984–85 (Del. Ch. 2016) (reasoning claims arising under statute and the Delaware Constitution were "inherently legal in nature").

[69] Delta Eta's Section 1983 claim likewise arises from statute.  *See* 42 U.S.C. § 1983.

18

### 3. Delta Eta's State Law Claims Do Not Properly Seek Equitable Relief.

The third bucket of this Court's equitable jurisdiction includes claims that are legal in nature, but which seek equitable relief where a legal remedy "is not fully sufficient to protect or redress the resulting injury under the circumstances."[70] In these cases, a plaintiff seeks a remedy exclusive to courts of equity, such as an injunction[71] or specific performance.[72] But seeking an equitable remedy alone is

---

[70] Wolfe & Pittenger § 2.03[b][1], at 2-24; *In re Wife, K.*, 297 A.2d 424, 426 (Del. Ch. 1972) ("An adequate remedy at law is one which (1) is as complete, practical and as efficient to the ends of justice and its prompt administration as the remedy in equity, and (2) is obtainable as of right."). Jurisdiction to hear such claims is conferred by 10 *Del. C.* § 342, which provides that "[t]he Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State."

When the Court of Chancery has jurisdiction over a legal claim because the plaintiff seeks an equitable remedy, the Court of Chancery is sometimes referred to as having "concurrent jurisdiction" over that claim. *See, e.g.*, *Glanding v. Indus. Tr. Co.*, 45 A.2d 553, 558–60 (Del. 1945); *IBM v. Comdisco, Inc.*, 602 A.2d 74, 78 n.6 (Del. Ch. 1991); Wolfe & Pittenger § 2.03[b][1], at 2-24 to -25. But as a leading Court of Chancery practice treatise explains, there cannot "exist[] a jurisdictional territory in which equity and the common law are equivalent and overlapping," because "equity jurisdiction stops where sufficient legal remedies begin." Wolfe & Pittenger § 2.03[b][1], at 2-25. If a claim satisfies this third category, only the Court of Chancery has jurisdiction over it.

[71] *Atl. Richfield Co. v. Tribbitt*, 1975 WL 1260, at *2 (Del. Ch. May 30, 1975) ("Chancery can do this through injunction; the Superior Court cannot. I feel that this Court does have jurisdiction.").

[72] 1 John Norton Pomeroy, *Pomeroy's Equity Jurisprudence* § 221b, at 378 (5th ed. 1941) ("The jurisdiction to enforce performance of contracts specifically is exclusive, for the remedy itself is most distinctively equitable and completely beyond the judicial methods of the law courts . . . .").

19

insufficient—the plaintiff must also lack an adequate remedy at law.[73] That is, where the asserted basis for jurisdiction is the request for an equitable remedy, equitable subject matter jurisdiction is not available if any remedy available from a court of law will adequately redress the injury.

Delta Eta has requested a declaratory judgment enforced by a forward-looking injunction "prohibit[ing] the City and Mayor & Council from relying on the" denial of the Special Use Application, and "mandating that the Application be approved since it met all applicable Zoning Code criteria."[74] Delta Eta argues this request for injunctive relief, alone, warrants this Court's subject matter jurisdiction.

Delta Eta is incorrect, for two reasons. First, a plaintiff may not invoke the Court's jurisdiction through the "incantation of magic words."[75] A plaintiff seeking

---

[73] *See Intel Corp. v. Fortress Inv. Grp., LLC*, 2021 WL 4470091, at *5–6 (Del. Ch. Sept. 30, 2021); *see also e.g.*, *W. Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC*, 2007 WL 3317551, at *12 (Del. Ch. Nov. 2, 2007) ("[S]pecific performance is particularly appropriate for enforcing contracts for the sale of real property. The party seeking specific performance must show that there is no adequate remedy at law." (footnote omitted)); *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010) (stating a party may not obtain specific performance unless she lacks an adequate remedy at law); s*ee also* 1 John Norton Pomeroy, *Pomeroy's Equity Jurisprudence* § 221b, at 378–79 (5th ed. 1941) (explaining that specific performance is available "only in those classes of cases in which, according to the views taken by the equity court, the legal remedy of compensatory damages is, from its essential nature, insufficient, and fails to do complete justice between the litigant parties").

[74] Am. Compl. ¶ 60.

[75] *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987); *see also IBM*, 602 A.2d at 78 (stating the Court "will not permit a suit to be brought in Chancery where a complete legal remedy otherwise exists but where the plaintiff has prayed for some type of

20

to invoke the Court's subject matter jurisdiction by asserting the need for a forward-looking injunction must demonstrate a reasonable apprehension of future harm.[76] Delta Eta has not pled—or even attempted to plead—that, absent that injunction, there is a reasonable apprehension of harm flowing from a municipal body implementing a decision that a court has declared was invalid.[77]

---

traditional equitable relief as a kind of formulaic 'open sesame' to the Court of Chancery"); *Strickler v. Sussex Life Care Assocs.*, 541 A.2d 587, 589 (Del. Super. 1987) ("A court of equity should, when required, go beyond a facade of prayers in order to determine whether the relief sought is actually equitable or legal.").

[76] *In re COVID-Related Restrictions on Religious Servs.*, 285 A.3d 1205, 1234 (Del. Ch. 2022) ("To demonstrate a basis for equitable jurisdiction, a plaintiff must establish 'a reasonable apprehension of risk of future breaches of a duty of a predictable type.' An unsupported, subjective concern about a future harm is insufficient to meet this test." (citation omitted) (quoting *Thorpe v. CERBCO, Inc.*, 1996 WL 560173, at *4 (Del. Ch. Sept. 13, 1996)); *Organovo Hldgs., Inc. v. Dimitrov*, 162 A.3d 102, 114 (Del. Ch. 2017) (reasoning "the Complaint's request for an injunction did not provide a basis for subject matter jurisdiction" because "[w]hen the Company filed suit, there was no 'reason to believe that [the defendant] continue his wrongful course of conduct.'" (quoting *Weiner v. Miller*, 1990 WL 54915, at *1–2 (Del. Ch. Apr. 27, 1990)); *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 536 (Del. Ch. 2005) ("The mere fact that the Attorney General has asked for an injunction does not suffice to state a claim within this court's equitable jurisdiction. Rather, a claim for injunctive relief must be supported by the allegation of facts that 'create a reasonable apprehension of a future wrong.'" (quoting *McMahon*, 532 A.2d at 605–06)).

[77] In fact, Delaware law presumes the opposite: that government agencies, of all actors, are likely to follow judicial declarations. *In re COVID-Related Restrictions*, 285 A.3d at 1233; *Crown Castle Fiber LLC v. City of Wilm.*, 2021 WL 2838425, at *5 (Del. Ch. July 8, 2021) ("Prospective injunctive relief is generally unavailable where the plaintiff's proposed injunction merely seeks to prospectively compel a government to conform with the interpretation of the law reflected in the proposed declaratory judgment.").

21

And second, a request for an injunction will not invoke this Court's subject matter jurisdiction if the plaintiff has an adequate remedy at law.[78]  In this context, where a plaintiff is seeking a judicial decree to correct a particular decision by a governmental officer or body, available remedies at law may include a remedial writ or a declaratory judgment.[79]

### a.    A Writ Of Certiorari Is Available And Adequate.

Defendants maintain a writ of certiorari is available to Delta Eta and would provide full and fair relief.  In briefing, Delta Eta conceded the availability of a writ of certiorari from the Superior Court and did not contest that it would afford an adequate remedy:  Delta Eta urged instead that this Court could maintain subject matter jurisdiction concurrently with the Superior Court.[80]  At the hearing, Delta Eta suggested that a writ of certiorari was inadequate because that review would be

---

[78] *See* 10 *Del. C.* § 342; *see also, e.g.*, *Hillsboro Energy, LLC v. Secure Energy, Inc.*, 2008 WL 4561227, at \*2–3 (Del. Ch. Oct. 3, 2008) (holding the Court lacked subject matter jurisdiction over a breach of contract claim seeking injunctive relief because a legal remedy would afford an adequate redress).

[79] *Mock v. Div. of State Police, Dep't of Safety & Homeland Sec.*, 2022 WL 1744439, at \*5–6 (Del. Ch. May 31, 2022).

[80] *See* Ans. Br. at 31 ("So Rezonings may be challenged in Superior Court by common law *certiorari*, but this Court has taken cognizance over dozens of such challenges."); *id.* at 32 ("The mere fact that Delta Eta could have potentially challenged the Zoning Use Denial via common law certiorari in the Superior Court does not, *ipso jure*, divest this Court of jurisdiction over zoning challenges cases like the instant action."); *id.* at 35 ("This Court and the Superior Court have concurrent jurisdiction over actions of this sort.").

22

limited to the record and under a limited standard of review, whereas Delta Eta would prefer a more lenient review supported by discovery.[81]

For purposes of a thorough analysis, I consider first the availability of a writ of certiorari, which turns on whether the City Council acted in a quasi-judicial capacity, rather than a legislative capacity, in denying the Special Use Application. Then I consider the writ's adequacy. I find it is both available and adequate, and therefore precludes this Court from exercising subject matter jurisdiction.

### i. The Writ of Certiorari

During the Middle Ages, English common law was administered through a system of writs, and a plaintiff could obtain judicial relief only by invoking one of

---

[81] D.I. 44 at 43 ("The case is largely based on the record. I've conceded all of that. But you are allowed to take discovery. . . . [Any discovery is] just to potentially supplement the record with facts that were mentioned during the process and then to provide documents to back that up. . . . So it's limited discovery, admittedly. But you don't get that in a certiorari [sic]. You also have a certiorari standard of review that is extremely stringent. It is not as broad of a standard of review as is available in this Court. . . . That's why I come to this Court, because I know that you are handcuffed and blindfolded in a certiorari case in Superior Court and you are not in this Court.").

Typically, arguments raised for the first time at oral argument are deemed waived. *See Asbestos Workers Loc. 42 Pension Fund v. Bammann*, 2015 WL 2455469, at *20 (Del. Ch. May 21, 2015). But arguments concerning subject matter jurisdiction cannot be waived. *See Carney*, 2018 WL 4849935, at *11. And while it may be appropriate at times to request supplemental briefing in response to belated subject matter jurisdiction arguments as a matter of fairness, I ultimately conclude Delta Eta's arguments fail to demonstrate a writ of certiorari would afford inadequate redress, so those fairness concerns are not implicated here. *See Jung v. El Tinieblo Int'l, Inc.*, 2022 WL 16557663, at *9 (Del. Ch. Oct. 31, 2022) ("Waiver is fundamentally an issue of fairness . . . .").

23

those writs.[82]  "A certiorari proceeding involves one of the oldest common law writs, tracing its origins to the Norman Kings."[83]  "In England, the writ was used primarily by judges of the King's Bench to supervise the conduct of inferior court officers."[84] A writ of certiorari allows "a higher court to review the conduct of a lower tribunal of record."[85]  It "is simply a form that calls up, for review, the record from the lower court or tribunal."[86]

The rigid and formalistic writ-based approach to the law eventually proved inadequate to address the needs of a changing society.[87]  Such shortcomings gave rise to courts of equity, which "supplement[ed] the common law" and "mitigate[d] its severity," and "generally [filled] the growing gap between the rigid and rigorous common law on the one hand, and the expanding universe of practical controversies

---

[82] *See XRI Inv. Hldgs. LLC v. Holifield*, 283 A.3d 581, 630–37 (Del. Ch. 2022) (discussing the origins of courts of equity); Wolfe & Pittenger § 2.02[a], at 2-3.

[83] *Shoemaker v. State*, 375 A.2d 431, 436 (Del. 1977).

[84] *Id.*

[85] *Christiana Town Ctr., LLC v. New Castle Cnty.*, 2004 WL 2821839, at *2 (Del. 2004); 1 Victor B. Woolley, *Practice in Civil Actions and Proceedings in the Law Courts of the State of Delaware* §§ 894–96, at 623–25 (1906) [hereinafter "Woolley"] (explaining that a writ of certiorari allows a higher court to review the record of a lower court for errors of law); *Maddrey v. Just. of Peace Ct. 13*, 956 A.2d 1204, 1212 (Del. 2008) (explaining that the Superior Court has the power to "issue common law writs of *certiorari* to all 'inferior tribunals'").

[86] *Maddrey*, 956 A.2d at 1213 (internal quotation marks omitted) (quoting *Reise v. Bd. of Bldg. App. of Newark, Del.*, 746 A.2d 271, 273 (Del. 2000)).

[87] Wolfe & Pittenger § 2.02[a], at 2-3.

born of an increasingly sophisticated society on the other."[88]   Between 1726 and 1736, the governor of the three counties of Delaware enacted statutes sometimes collectively referred to as the Gordon Act.[89]   Through the Gordon Act, the Court of Chancery was created and was vested with "all the general equity jurisdiction of the High Court of Chancery of Great Britain as it existed prior to the separation of the colonies," and could not "hearand determineany cause where a sufficient remedy exists at law."[90]   This grant of jurisdiction was continued through each iteration of our state Constitution, and forms the basis of this Court's jurisdiction as it exists today.

And today, writs are still legal remedies afforded only by courts of law.[91]   In Delaware, writs of certiorari may be issued by the Superior Court, to the exclusion of all other trial courts.[92]   In many cases, writs can provide an adequate remedy,

---

[88] *Id.*

[89] *DuPont v. DuPont*, 85 A.2d 724, 727 (Del. 1951); Woolley § 4, at 3; Wolfe & Pittenger § 2.02[b] at 2-4 & n.5 (explaining the exact date the Gordon Act was enacted is uncertain). The Act's full name is "An Act for the Establishing Courts of Law and Equity within this Government [sic]." *Id.* at § 2.02[b], at 2-4 (alteration in original).

[90] *DuPont*, 85 A.2d at 727.

[91] *Maddrey*, 956 A.2d at 1212; *see also* 14 Am. Jur. 2d *Certiorari* § 2 (Jan. 2013 Update) ("Certiorari is a law action.").

[92] 10 *Del C.* § 562 (conferring on the Superior Court the power to issue writs of certiorari); *Maddrey*, 956 A.2d at 1207 ("[T]he Superior Court has original and exclusive jurisdiction among trial courts under the Delaware Constitution to issue common law writs of *certiorari* to inferior tribunals . . . ."); *see also* Woolley § 896, at 624 ("As a broad general rule, a writ of *certiorari* lies from the Superior Court to inferior tribunals . . . .").

obviating the need for, and therefore the availability of, injunctive relief or another equitable remedy. For example, where a plaintiff seeks to compel a government official to perform a nondiscretionary act, a writ of mandamus will serve the same function as an injunction.[93] Similarly, where a governmental entity acts as a tribunal (rather than a legislative body), a plaintiff may, under some circumstances, challenge that decision through a writ of certiorari.

When reviewing a decision pursuant to a writ of certiorari, the court "considers the record to determine whether the lower tribunal exceeded its jurisdiction, committed errors of law, or proceeded irregularly."[94] In *Christiana Town Center, LLC v. New Castle County*, the Delaware Supreme Court explained each of these three grounds in greater detail:

---

[93] *See Mock*, 2022 WL 1744439, at *9 ("Where mandamus is available, this Court's injunctive power is superfluous and therefore not available.").

[94] *Christiana Town Ctr.*, 2004 WL 2921830, at *2.

1. A decision will be reversed on jurisdiction grounds only if the record fails to show that the matter was within the lower tribunal's personal and subject matter jurisdiction.

2. A decision will be reversed for an error of law committed by the lower tribunal when the record affirmatively shows that the lower tribunal has "proceeded illegally or manifestly contrary to law."

3. A decision will be reversed for irregularities of proceedings if the lower tribunal failed to create an adequate record to review.[95]

A writ of certiorari is available only where (1) the lower entity has acted in a judicial or quasi-judicial capacity,[96] (2) there is no other adequate remedy at law,[97] and (3) there is no right to appeal.[98] As explained, Delta Eta does not dispute that a writ of certiorari is available, nor that the latter two elements are met here.[99] Accordingly, whether a writ of certiorari is available to address the effective denial of the Special Use Application depends on whether the City Council was acting in a judicial or quasi-judicial capacity.

---

[95] *Id.* at *2 (quoting Woolley § 939, at 651).

[96] *Dover Hist. Soc. v. City of Dover Plan. Comm'n*, 838 A.2d 1103, 1106 (Del. 2003) ("The common law writ of certiorari lies to review acts that are judicial or quasi-judicial in nature."); *accord Anthony v. Bickley*, 2014 WL 3943687, at *2 (Del. Super. Aug. 8, 2014); *Spencer v. Smyrna Bd. of Educ.*, 547 A.2d 614, 615–16 (Del. Super. 1988); *Bramble v. Dannemann*, 1980 WL 6366, at *2 (Del. Ch. Jan. 10, 1980); *Del. Barrel & Drum Co. v. Mayor & Council of City of Wilm.*, 175 A.2d 403, 404 (Del. Super. 1961).

[97] *In re Petition of Howell*, 2007 WL 1114123, at *1 (Del. 2007).

[98] *See Reise v. Bd. of Bldg. Appeals of City of Newark*, 746 A.2d 271, 272 (Del. 2000), *overruled on other grounds by Black v. New Castle Cnty. Bd. of License*, 117 A.3d 1027 (Del. 2015).

[99] *See* City Code § 1 *et seq.* The parties do not dispute that Delta Eta lacks a statutory right to appeal the City Council's decision.

Even though Delta Eta concedes the availability of a writ of certiorari, it still challenges the characterization of the City Council's evaluation and denial of the Special Use Application as quasi-judicial. I conclude it was quasi-judicial.

### ii. Special Use Decisions Governed By Ordinance Are Quasi-Judicial Acts Remedied By Writs Of Certiorari.

An entity acts in a quasi-judicial capacity where it applies existing laws to a set of facts before it.[100] In other words, a quasi-judicial act carries out existing

---

[100] *Tony Ashburn & Son, Inc. v. Kent Cnty. Reg'l Plan. Comm'n*, 962 A.2d 235, 239 (Del. 2008); *JNK, LLC v. Kent Cnty. Reg'l Plan. Comm'n*, 2007 WL 1653508, at *4 (Del. Super. May 9, 2007) (reasoning a planning commission "must possess some quasi-judicial power, 'since subdivision control involves the specific application of the applicable general standards to the particular facts of a proposed subdivision.'" (quoting 5 Edward H. Ziegler, Jr., *Rathkopf's The Law of Zoning and Planning* § 90:5)); *Marshall-Steele v. Nanticoke Mem'l Hosp., Inc.*, 1999 WL 458724, at *6 (Del. Super. June 18, 1999) ("Where an administrative tribunal is under a duty to consider evidence and apply law to facts as found, the tribunal is performing a quasi judicial function."); *E. Lake P'rs v. City of Dover Plan. Comm'n*, 655 A.2d 821, 825 (Del. Super. 1994) (reasoning the Dover Planning Commission acted partly in a quasi-judicial capacity because it took into account six factors appearing in an ordinance and had to "scrutinize the layout of the project as depicted on the site plan and attach conditions to the on-site layout so as to minimize any adverse impact on the adjoining property owners and the general public"); *CBS Foods, Inc. v. Redd*, 1982 WL 533240, at *3 (Del. Super. Jan. 19, 1982) ("[T]his Court is of the opinion that when applying the ordinance to different sets of facts on a case-by-case basis, the Council takes on a purely administrative, or quasi-judicial function, and its decisions should be reviewed as such."); *see also* 17 McQuillin Mun. Corp. § 49:85 (3d ed. 2007) [hereinafter "McQuillin"] (a quasi-judicial act "generally involves a determination of the rights, dutie, [sic] or obligations of specific individuals on the basis of the application of presently existing legal standards or policy considerations to past or present facts developed at a hearing conducted for the purpose of resolving the particular interests in question"); 14 Am. Jur. 2d *Certiorari* § 25 (Jan. 2013 Update) (listing "whether a determination of the parties' rights is made that requires the exercise of discretion in finding facts and applying

28

legislative policy, rather than making new policy.[101]  By contrast, an entity acts in a legislative capacity when it creates new laws, or effectively amends or repeals existing laws.[102]

The Delaware Constitution vested the General Assembly with the power to "enact laws under which municipalities and [counties] may adopt zoning ordinances, [and] laws or rules limiting and restricting to specified districts and regulating therein buildings and structures according to their construction and the nature and

---

the law to them" as a consideration relevant to determining whether an entity acted in a quasi-judicial capacity).

In deciding whether an act is quasi-judicial, Courts have also considered other factors, including whether a hearing was available, whether notice is required, whether oaths are administered, and whether there is a right to appeal.  *See Cook v. Deep Hole Creek Assocs.*, 2021 WL 1561410, at \*3 (Del. Super. Apr. 21, 2021); McQuillin § 49:85 (listing as factors whether notice and a hearing are required and "whether the challenged act goes to the determination of some right the protection of which is the peculiar office of the courts").

[101] *CBS Foods*, 1982 WL 533240, at \*3; *Schweizer v. Bd. of Adjustment of City of Newark*, 980 A.2d 379, 385 (Del. 2009); *see also* McQuillin § 16:53 ("The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it."); 56 Am. Jur. 2d *Municipal Corporations, Etc.* § 280 (Jan. 2013 Update) ("[T]he crucial test for determining that which is legislative (ordinance) from that which is administrative or executive (resolution) is whether the action taken was one making a law or one executing or administering a law already in existence.").

[102] *See CBS Foods*, 1982 WL 533240, at \*3; *see also Bay Colony, Ltd. v. Cnty. Council of Sussex Cnty.* (*Bay Colony II*), 1984 WL 159381, at \*3 (Del. Ch. Dec. 5, 1984) ("The technique of using conditional uses to provide for flexibility in the zoning scheme presupposes that some sort of legislative determination has been made as to which uses are compatible within a given area but require special supervision to insure [sic] that there will be no adverse consequences.").

extent of their use."[103]  In turn, through 22 *Del. C.* § 301, the General Assembly granted Delaware municipalities and counties the power to zone "[f]or the purpose of promoting health, safety, morals, or the general welfare of the community."[104] Settled Delaware law provides that zoning and rezoning are both legislative functions.[105]

---

[103] Del. Const. art. II § 25; *Del. Dept. of Nat'l Res. & Env't Control v. Sussex Cnty.*, 34 A.3d 1087, 1090 (Del. 2011) ("The power to zone is vested in the General Assembly.").

[104] 22 *Del. C.* § 301; *supra* notes 64–65.

[105] *Schweizer*, 980 A.2d at 385 ("The establishment of residential zones and the permitted and prohibited uses in those districts (including prohibiting a fraternity or sorority use in an off-campus residential district) is the pertinent 'legislative' action."); *New Castle Cnty. Council v. BC Dev. Assocs.*, 567 A.2d 1271, 1275 (Del. 1989) ("When Council considers a zoning ordinance, it is acting in a legislative capacity."); *Hayward v. Gaston*, 542 A.2d 760, 769 (Del. 1988); *Tate v. Miles*, 503 A.2d 187 (Del. 1986) ("[T]he [Sussex County] Council's rezoning function is legislative . . . ."); *Willdel Realty, Inc. v. New Castle Cnty.*, 281 A.2d 612, 614 (Del. 1971) ("Zoning is a legislative action presumed to be valid unless clearly shown to be arbitrary and capricious because not reasonably related to the public health, safety, or welfare."); *see also Dukes v. Shell Oil Co.*, 177 A.2d 785, 790 (Del. Ch. 1962) ("Though of relatively recent origin, zoning laws and regulations are now uniformly recognized as proper subjects of legislative action.").

Delta Eta argues that "it is unclear whether zoning decisions are properly characterized as administrative, legislative, or judicial," because our Supreme Court has said both that the power to rezone "is analogous to that of an administrative agency," and that "a rezoning function is legislative."  Ans. Br. at 29–30 (internal quotation marks omitted) (quoting *BC Dev. Assocs.*, 567 A.2d at 1275, and then *Tate*, 503 A.2d at 191). But the Supreme Court was not saying that zoning is an administrative action.  Rather, in analogizing a county council's zoning power to that of an administrative agency, the Supreme Court in both *Tate* and *BC Development Associates* was explaining only that a county may enact zoning ordinances to the extent the General Assembly has given it the power to do so.  *See BC Dev. Assocs.*, 567 A.2d at 1275–76; *Tate*, 503 A.2d at 191. Because the applicable statutes grant the power to zone only for the "purpose of promoting the health, safety, morals, convenience, order, prosperity or welfare of the present and future inhabitants of this State," any zoning ordinance must necessarily be enacted consistent with that mandate for the ordinance to be valid.  *See, e.g.*, 9 *Del. C.* § 2603

30

Zoning ordinances can identify certain uses that are always allowed, and enumerate special uses that are permissible but not available as a matter of right.[106] "A conditional use (sometimes called a special exception) is not truly an exception to a zoning ordinance, but is a use in compliance with, rather than in variance of, the ordinance and is allowable when the prerequisite facts and conditions specified in the ordinance are found to exist."[107] That is, a special use typically allows one to choose from "enumerated uses the legislature has determined to be permissible."[108]

When the availability of the special use permit is circumscribed by ordinance, approving or denying a special use permit application is a quasi-judicial act.[109] In granting such special uses, a municipality is not legislating: the legislative act occurred when the municipality selected those enumerated special uses and added

_____

(statutory delegation of zoning power to New Castle County). As the forgoing authorities demonstrate, our Supreme Court has been unwavering in categorizing zoning decisions as legislative.

[106] 101A C.J.S. *Zoning and Land Planning* § 309 (Nov. 2022 Update).

[107] *Steen*, 576 A.2d at 646.

[108] 101A C.J.S. *Zoning and Land Planning* § 309 (Nov. 2022 Update).

[109] *See Gibson*, 877 A.2d at 65; *E. Lake P'rs*, 655 A.2d at 825; *Marshall-Steele*, 1999 WL 458724, at *6; *CBS Foods*, 1982 WL 533240, at *3; *see also Omnipoint Corp. v. Zoning Hearing Bd. Of Pine Grove Twp.*, 181 F.3d 403, 409 (3d Cir. 1999) (reasoning a zoning hearing board acted in a quasi-judicial capacity when it denied an application for a special use permit); 3 Arden H. Rathkopf et al., *Rathkopf's The Law of Zoning and Planning* § 61:47 (4th ed. 2005) ("For the purpose of judicial review, many if not most courts treat the decision of a local legislative body to grant or deny a special permit as a quasi-judicial act subject to court review on questions of law and abuse of discretion and substantial evidence review of reasons and findings.").

any additional conditions on granting the permit.[110] This is true even where the same entity passes the zoning ordinance and approves or denies the special use permit; an entity may act in a quasi-judicial capacity when taking certain action, and a legislative capacity when taking others.[111]

But if ordinances do not limit a particular special use by district or zone, such that the use is permitted it "in all zones indiscriminately," then the decision to allow or deny that special use is a legislative act.[112] In *Bay Colony v. County Council of Sussex County*, this Court explained that granting such a permit effectively rezones property, and therefore should be treated like a legislative act.[113] Later, *Gibson v. Sussex County Council* explained that this standard must be applied on a case-by-case basis, focusing on the particular special use at issue rather than whether a municipality's or county's zoning scheme provides for unrestricted special uses or any unrestricted special uses at all.[114]

---

[110] *Schweizer*, 980 A.2d at 385; *CBS Foods*, 1982 WL 533240, at *3 ("Thus, in the case at bar, although the Council performed a legislative function when it enacted § 32-56.4. . . ."); 101A C.J.S. *Zoning and Land Planning* § 309 (Nov. 2022 Update).

[111] 14 Am. Jur. 2d *Certiorari* § 25 (Jan. 2013 Update) ("Whether an act is judicial or quasi-judicial so as to be reviewable by certiorari depends on the nature of the act performed rather than on the character of the officer or body performing it." (footnote omitted)).

[112] *See Gibson*, 877 A.2d 65; *see also Steen*, 576 A.2d at 647.

[113] *Bay Colony Ltd. P'ship v. Cnty. Council* (*Bay Colony I*), 1984 WL 159382, at *3 (Del. Ch. Feb. 1, 1984).

[114] 877 A.2d at 65.

Here, the City Council acted in a quasi-judicial capacity in effectively denying Delta Eta's Special Use Application. The relevant legislative act was the City Council's adoption of the applicable zoning ordinances.[115] Those ordinances establish zoning districts,[116] each of which allows for certain enumerated uses.[117] Many, if not all, districts also list a number of permissible uses that require special use permits.[118] The City Code limits the special use of a fraternity house to particular districts.[119] The availability of a special use permit to use property as a fraternity house is part of the City Council's legislative act of creating the zoning ordinance.

In reviewing each special use permit application, the City Council acts in a quasi-judicial capacity, because it is applying the existing law to each case before it. The City Council must ensure the special use complies with the governing zoning ordinance. To receive a special use permit, the applicant must attend a hearing before the City Council, and the City Council may grant the special use permit if it finds that the special use will not have adverse health or safety effects, "[b]e

---

[115] *See Schweizer*, 980 A.2d at 385.

[116] City Code § 32-5.

[117] *See, e.g.*, *id.* § 32-11(a) (allowing for, among other things, one-family detached dwellings in districts zoned RM).

[118] *See, e.g.*, *id.* § 32-11(b) (allowing for, among other things, libraries and museums in districts zoned RM).

[119] *Compare id.* § 32-11(b)(14) (allowing fraternity houses in districts zoned RM), *with id.* § 32-16(b) (not listing fraternity houses as a special use in districts zoned BL).

detrimental to the public welfare or injurious to property or improvements," and "[b]e in conflict with the purposes of the comprehensive development plan of the city."[120] The City Council may also require additional conditions that "in its opinion, assure that the use will conform to the foregoing requirements and that such use will continue to do so."[121] As to special use permits to use a property as a fraternity house, the City Code provides that the City Council must consider a report by the planning and development director or another City official, and the City Council "may impose[] additional conditions."[122] When evaluating an application for a special use permit, the City Council applies these criteria on a case-by-case basis to ensure that the special use at issue meets the general standards established by existing law. Because the City Code restricts the use of a fraternity house by district, *Gibson*'s parameters for treating the evaluation of a special use permit application as a legislative act do not apply.[123]

The Superior Court has previously found that the City Council's decision as to whether to approve a special use permit is a quasi-judicial act. In *CBS Foods, Inc. v. Redd*, the Superior Court addressed a claim challenging the City Council's

---

[120] City Code §§ 32-78(a)(1)(a)–(c).

[121] *Id.* § 32-78(a)(1).

[122] *Id.* § 32-11(b)(14)(c).

[123] *Gibson*, 877 A.2d at 64–65.

decision to deny a special use permit to sell liquor within 200 feet of a church.[124] The permit was available only if specified criteria set forth in the municipal code were satisfied, which is substantially similar to the ordinance at issue here.[125] The Court explained that "the Council performed a legislative function when it *enacted*" the special use statute, but that "when applying the ordinance to different sets of facts on a case-by-case basis, the Council takes a purely administrative, or quasi-judicial function."[126]

I conclude the City Council acted in a quasi-judicial capacity in denying the Special Use Application. It follows that a writ of certiorari is available to Delta Eta.[127] The only remaining question is whether the writ of certiorari affords an adequate remedy at law.

---

[124] *Id.* at *1.

[125] *Id.* at *4 (requiring that the conditional use not: "(A) Affect adversely the health or safety of persons residing or working in the neighborhood of the proposed use; (B) Be detrimental to the public welfare or injurious to property or improvements in the neighborhood; and (C) Be in conflict with the purposes of the comprehensive development plan of the city." (quoting City Code § 32-78(a)(1)).

[126] *Id.* at *3.

[127] That Delta Eta waited to seek certiorari review such that it may now be unavailable is irrelevant for purposes of this decision. *In re Wife, K.*, 297 A.2d at 425 ("[I]f a litigant fails to avail himself of a remedy provided by law and is subsequently barred from pursuing that remedy because of his own lack of diligence, he cannot then rely on the absence of a remedy at law as a basis for equitable jurisdiction.").

### iii. A Writ of Certiorari Is An Adequate Legal Remedy For Challenging The Quasi-Judicial Denial Of A Special Use Permit.

Prerogative writs "are capable of affording complete and adequate relief to a petitioner and, if such is the case, resort may not be had to a court of equity."[128] Whether a particular remedy is adequate is "necessarily fact-intensive and, thus, peculiar to each asserted claim."[129] Delta Eta does not dispute that a writ of certiorari can, in the abstract, remedy a City Council special use decision that fails to comply with the City Code. Rather, Delta Eta suggests a certiorari proceeding is not adequate because it prefers a proceeding supported by discovery and applying a more lenient standard of review.

Delta Eta's first point is unfounded, as a plaintiff may not obtain discovery in challenging the approval or denial of a special use permit application in this Court. Where a plaintiff challenges a municipality's legislative zoning or rezoning decision in this Court, the Court's review is limited to the record, and that plaintiff may not

---

[128] *Fam. Ct. v. Dept. of Lab. And Indus. Rels.*, 320 A.2d 777, 780 (Del. Ch. 1974) (collecting cases); *cf. Hundley v. O'Donnell*, 1998 WL 842293, at *3 (Del. Ch. Dec. 1, 1998) ("Plaintiff can file a writ of certiorari in the Superior Court to have that issue resolved. Furthermore, Plaintiff fails to convince me that this remedy is inadequate. Were there some factors pleaded here to suggest that were so, the result might be quite different." (footnote omitted)).

[129] Wolfe & Pittenger § 2.03[b][3][ii], at 2-62.

obtain discovery.[130] And even where a plaintiff has secured this Court's review of the approval or denial of a special use application, that review is limited to the record.[131] Delaware courts have permitted discovery beyond the record below in limited circumstances, such as where the plaintiff contends a developmental project should not be regulated by the municipal body at all.[132] In these circumstances, in which Delta Eta is challenging the denial of its application, the lack of discovery in a writ proceeding cannot render that remedy inadequate, because discovery would not be available for the same plaintiff seeking an injunction in the Court of Chancery.

---

[130] *See Cain v. Sussex Cnty. Council*, 2020 WL 2122775, at *7 (Del. Ch. May 4, 2020) ("The Court's role in reviewing a zoning decision is limited to a review of the record to ascertain whether the decision is supported by substantial evidence, or whether it is in any way arbitrary, capricious, or an abuse of discretion." (internal quotation marks omitted) (quoting *Concerned Citizens of Cedar Neck, Inc. v. Sussex Cnty. Council*, 1998 WL 671235, at *5 (Del. Ch. Aug. 14, 1998))); *Port Penn Hunting Lodge Ass'n v. Meyer*, 2019 WL 2077600, at *11 (Del. Ch. May 9, 2019) ("This Court's role in reviewing a zoning decision . . . is limited to a review of the record to ascertain if the statutory procedural mandates have been followed, that the decision is supported by substantial evidence and that it is not arbitrary or capricious or an abuse of discretion." (alteration in original) (internal quotation marks omitted) (quoting *Steen*, 576 A.2d at 648)); *Stephen C. Glenn, Inc. v. Sussex Cnty. Council*, 532 A.2d 80, 83 (Del. Ch. 1987) ("This Court's role in reviewing a zoning decision of the Sussex County Council is limited to a review of the record to ascertain if the decision is supported by substantial evidence or whether it is in any way arbitrary, capricious or an abuse of discretion." (collecting cases)); *see also Tidewater*, 1986 WL 10082, at *3 (reviewing decision on only the record).

[131] *Coker*, 2008 WL 5451337, at *7 ("This court's review of a decision by a local zoning authority to deny a conditional use application, like its review of other zoning decisions, is a limited one. I may only review 'the record to ascertain if the statutory procedural mandates have been followed, that the decision is supported by substantial evidence and that it is not arbitrary, capricious or an abuse of discretion.'" (quoting *Steen*, 576 A.2d at 648)).

[132] *See Lynch v. Tunnell*, 236 A.2d 369, 459–60 (Del. 1967).

37

Delta Eta is correct that a writ of certiorari proceeds under a more deferential standard of review that would otherwise be applied if it were properly seeking review by this Court. When the Court of Chancery has reviewed the denial of a special use application, the municipal body's decision was presumed correct and the Court was left to determine whether "the statutory procedural mandates have been followed, that the decision is supported by substantial evidence and that it is not arbitrary, capricious or an abuse of discretion."[133] Review pursuant to a writ of certiorari is less rigorous, and is cabined to an assessment of "whether the lower tribunal exceeded its jurisdiction, committed errors of law, or proceeded irregularly."[134]

To invoke this Court's jurisdiction, Delta Eta must not only point out that the certiorari standard of review is different: it must demonstrate that the standard is so limited in scope as to be incapable of affording full and fair relief.[135] Delta Eta has not made any attempt to demonstrate that review on certiorari is "not fully sufficient

---

[133] *Coker*, 2008 WL 5451337, at *7 (quoting *Steen*, 576 A.2d at 648); *see Gibson*, 877 A.2d at 66.

[134] *Christiana Town Ctr.,* 2004 WL 2921830, at *2 ("The trial judge did, however, make several references to the phrase substantial evidence. Because substantial evidence review is more rigorous than review on certiorari, Christiana benefitted from any erroneous reference made by the trial judge to this standard.").

[135] *See Holland v. Zarif*, 794 A.2d 1254, 1269 (Del. Ch. 2002); *Lynch*, 236 A.2d at 459–60.

to protect or redress the resulting injury under the circumstances."[136] Delta Eta has an adequate remedy at law in a writ of certiorari.

b. **To The Extent A Declaratory Judgment Is Warranted, An Injunction Is Not Needed To Enforce A Declaratory Judgment Against The City Council.**

Coupled with its request for an injunction, Delta Eta seeks a declaratory judgment. This request is rooted in Delta Eta's legal claim based on Defendants' alleged failure to evaluate the Special Use Application consistent with the special use ordinance.[137] The Declaratory Judgment Act is not jurisdictional and cannot confer or take away the Court's jurisdiction.[138]

---

[136] Wolfe & Pittenger § 2.03[b][1], at 2-24; 10 *Del. C.* § 342 (providing this Court does not have subject matter jurisdiction where a "sufficient remedy may be had by common law . . . before any other court . . . of this State"); *see Gladney v. City of Wilm.*, 2011 WL 6016048, at *5 (Del. Ch. Nov. 30, 2011) (finding the Court lacked subject matter jurisdiction where the plaintiff had an adequate remedy at law available in the form of a writ of certiorari).

[137] *See supra* Section II.A.2.

[138] *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 623 A.2d 1133, 1136 (Del. Super. 1992) ("The declaratory judgment statute . . . does not create any substantive rights but merely provides a procedural means for securing judicial relief in an expeditious and comprehensive manner." (citing *Stabler v. Ramsay*, 88 A.2d 546 (Del. 1952))); *City of Wilm. v. Del. Coach Co.*, 230 A.2d 762, 766 (Del. Ch. 1967) ("The declaratory judgment statute does not increase or enlarge this Court's jurisdiction and it does not change the jurisdictional relationship between the Superior Court and the Court of Chancery."); *Diebold Comput. Leasing, Inc. v. Com. Credit Corp.*, 267 A.2d 586, 591 (Del. 1970) ("Jurisdiction under the Declaratory Judgment Act is based on the question of whether law or equity traditionally would have jurisdiction of the subject matter if the controversy should develop to a later stage; of whether the issues raised would be presented in a legal or equitable action if coercive relief were being sought. Specifically, the Chancery Court has jurisdiction in a declaratory judgment action if there is any underlying basis for equity jurisdiction measured by traditional standards." (collecting cases)); *see also*

As this Court has said recently, a declaratory judgment alone, without an injunction, is usually an adequate remedy at law against a government body.[139]  Our law presumes that a defendant will comply with a declaratory judgment,[140] and this presumption is even stronger when the defendant is a government entity.[141]  The Court has described the limited circumstances in which an injunction would be needed to prevent a governmental entity from acting:  (1) "[w]here there is a real chance that relief will not be forthcoming absent injunction, equity is invoked"; (2) "[w]here the right requires a remedy bespoke to the facts, equity is invoked"; and (3) "[w]here an ongoing deprivation of rights needs a remedy by interim relief, equity is invoked."[142]  This Court will issue injunctive relief as to a legislative act

---

*Kraft*, 145 A.3d at 985 ("Whether a declaratory judgment is legal or equitable in nature depends on the underlying subject matter.").

[139] *In re COVID-Related Restrictions*, 285 A.3d at 1234–35; *Birney v. Del. Dep't of Safety & Homeland Sec.*, 2022 WL 16955159, at *2–3 (Del. Ch. Nov. 16, 2022); *Crown Castle*, 2021 WL 2838425, at *7.

[140] *See Birney*, 2022 WL 16955159, at *2.

[141] *In re COVID-Related Restrictions*, 285 A.3d at 1233 ("And that is particularly true where government action is concerned, such that '[p]rospective injunctive relief is generally unavailable where the plaintiff's proposed injunction merely seeks to prospectively compel a government to conform with the interpretation of the law reflected in the proposed declaratory judgment.'" (alteration in original) (quoting *Crown Castle*, 2021 WL 2838425, at *5, and *Birney*, 2022 WL 16955159, at *2–3 (Del. Ch. Nov. 16, 2022)).

[142] *Birney*, 2022 WL 16955159, at *2.

only where necessary; if a declaratory judgment from the Superior Court will suffice, this Court has no jurisdiction to hear the claim.[143]

Delta Eta has not demonstrated that an injunction is necessary to enforce a declaratory judgment against these Defendants, and I cannot see that it is. While I need not decide whether a declaratory judgment from the Superior Court is available or proper here, I simply note that the Superior Court is equally capable of affording that remedy.[144]

* * * * *

Delta Eta has not properly invoked this Court's equitable jurisdiction by seeking an injunctive remedy to its legal claims. Delta Eta has not established a reasonable likelihood of future harm. Because the City Council acted in a quasi-judicial capacity when it voted on the Special Use Application, a writ of certiorari is available to review the decision. Delta Eta has failed to demonstrate why a writ of certiorari would not afford it full, fair, and adequate relief, and so Delta Eta has an

---

[143] *In re COVID-Related Restrictions.*, 285 A.3d at 1233–35; *Birney*, 2022 WL 16955159, at *2–3.

[144] *See, e.g.*, *Reed v. Brady*, 2002 WL 1402238, at *3 n.7 (Del. Ch. June 21, 2002) ("Issues of statutory and constitutional interpretation are, beyond question, legal issues capable of resolution by the Superior Court, and declaratory relief is available there to the same extent as it is here." (citing 10 *Del. C.* § 6501)). The Superior Court has heard cases seeking both a writ of certiorari and a declaratory judgment. *See, e.g.*, *R.R. Bayside v. Sussex Cnty.*, 1999 WL 743523, at *2 (Del. Super. July 20, 1999).

adequate remedy at law. To the extent a declaratory judgment is available and appropriate here, the Superior Court is equally capable of affording that remedy.

### c. A Note On Delta Eta's Cited Zoning And Special Use Cases

Having performed the traditional jurisdictional analysis, I now turn to Delta Eta's contention that the dozens of cases it cited demonstrate that this Court must have jurisdiction over this case. Delta Eta describes the bulk of those cases as addressing rezoning decisions,[145] leaving only twelve cases that it describes as

---

[145] *Barley Mill, LLC v. Save Our Cnty., Inc.*, 89 A.3d 51 (Del. 2014); *Shevock v. Orchard Homeowners Ass'n, Inc.*, 621 A.2d 346 (Del. 1993); *BC Dev. Assocs.*, 567 A.2d 1271; *Tate*, 503 A.2d 187; *Willdel*, 281 A.2d 612; *Daniel D. Rappa, Inc. v. Engelhardt*, 256 A.2d 744 (Del. 1969); *Cain*, 2020 WL 2122775; *TD Rehoboth LLC v. Sussex Cnty. Council*, 2017 WL 3528391 (Del. Ch. Aug. 11, 2017); *Brohawn v. Town of Laurel*, 2009 WL 1449109 (Del. Ch. May 13, 2009); *Christiana Town Ctr., LLC v. New Castle Cnty.*, 2009 WL 781470 (Del. Ch. Mar. 12, 2009); *Hansen v. Kent Cnty.*, 2007 WL 1584632 (Del. Ch. May 25, 2007); *O'Neill v. Town of Middletown*, 2007 WL 2752981 (Del. Ch. Mar. 29, 2007); *O'Neill v. Town of Middletown*, 2007 WL 1114019 (Del. Ch. Mar. 29, 2007); *Fields v. Kent Cnty.*, 2006 WL 345014 (Del. Ch. Feb. 2, 2006); *O'Neill v. Town of Middletown*, 2006 WL 205071 (Del. Ch. Jan. 18, 2006); *Citizens' Coal., Inc.*, 2004 WL 1043726; *Deskis v. Cnty. Council of Sussex Cnty.*, 2001 WL 1641338 (Del. Ch. Dec. 7, 2001); *Citizens Coal., Inc. v. Cnty. Council of Sussex Cnty.*, 1999 WL 669307 (Del. Ch. July 22, 1999); *Country Preservation Ass'n of Kent Cnty. v. Kent Cnty. Levy Ct.*, 1991 WL 153063 (Del. Ch. July 26, 1991); *Mifflin Rd. Neighborhood Ass'n. v. City of Dover*, 1986 WL 13500 (Del. Ch. Nov. 28, 1986); *Green v. Cnty. Council of Sussex Cnty.*, 508 A.2d 882 (Del. Ch. 1986); *Sussex Cnty. Env't Concerns Ass'n, Inc. v. Rehoboth Mall Ltd. P'ship*, 1985 WL 165734 (Del. Ch. Mar. 20, 1985); *Deibler v. Sea Gate Vill.*, 1983 WL 142507 (Del. Ch. Aug. 24, 1983); *N. Dover Civic Ass'n v. City of Dover*, 1981 WL 88242 (Del. Ch. Nov. 13, 1981); *Green v. Cnty. Plan. & Zoning Comm'n of Sussex Cnty.*, 340 A.2d 852 (Del. Ch. 1974); *Dukes*, 177 A.2d 785; *Reinbacher v. Conly*, 141 A.2d 453 (Del. Ch. 1958).

addressing special use permits.[146]  As explained, the act of rezoning is legislative in nature and therefore cannot be subject to a writ of certiorari that precludes this Court's jurisdiction.[147]

Of the twelve cases described as addressing special use permits, nine concern land situated in Sussex County,[148] which has a comprehensive zoning ordinance that can render special use decisions legislative rather than quasi-judicial, such that writs of certiorari are unavailable.[149]  Before 2005, the case law treated Sussex County

---

[146] *Norino Props. LLC v. Mayor & Town Council of Town of Ocean View*, 2010 WL 3610206 (Del. Ch. Aug. 30, 2010); *Coker*, 2008 WL 5451337; *Barry v. Town of Dewey Beach*, 2006 WL 3246344 (Del. Ch. Oct. 27, 2006); *Green v. City Council of Sussex Cnty.*, 1994 WL 469167, at *1 (Del. Ch. Aug. 11, 1994); *Stephen C. Glenn, Inc.*, 532 A.2d 80; *Tidewater*, 1986 WL 10082; *Sears v. Levy Ct. of Kent Cnty.*, 1986 WL 10085 (Del. Ch. Sept. 15, 1986); *Bay Colony I*, 1984 WL 159382; *Red Mill Farms Prop. Owners Ass'n, Inc. v. Cnty. Council of Sussex Cnty.*, 1983 WL 142515 (Del. Ch. Dec. 9, 1983); *Showalter v. Cnty. Council of Sussex Cnty.*, 1983 WL 142510 (Del. Ch., Aug. 2, 1983); *Wilkins v. Levy Ct. Comm'rs*, 1981 WL 88252 (Del. Ch. May 28, 1981); *Russell v. Cnty. Council*, 1980 WL 81859 (Del. Ch. Apr. 30, 1980).

[147] *Del. Barrel & Drum*, 175 A.2d at 404 ("The common-law writ of certiorari lies to reviews acts which are judicial or quasi-judicial in nature, and does not lie to review acts which are administrative or legislative in nature."); *Tate*, 503 A.2d at 191 ("[T]he Council's rezoning function is legislative . . . ."); *Wilkins*, 1981 WL 88252, at *3 (referring to act of zoning as a "legislative action"); *Dukes*, 177 A.2d at 790 ("Though of relatively recent origin, zoning laws and regulations are now uniformly recognized as proper subjects of legislative action.").

[148] *Norino*, 2010 WL 3610206; *Barry*, 2006 WL 3246344; *Green v. City Council of Sussex Cnty.*, 1994 WL 469167, at *1 (Del. Ch. Aug. 11, 1994); *Stephen C. Glenn, Inc. v. Sussex Cnty. Council*, 532 A.2d 80 (Del. Ch. 1987); *Tidewater*, 1986 WL 10082; *Bay Colony I*, 1984 WL 159382; *Red Mill Farms*, 1983 WL 142515; *Showalter*, 1983 WL 142510; *Russell*, 1980 WL 81859.

[149] *See Bay Colony I*, 1984 WL 159382, at *1 ("[T]he grant of a conditional use is done by the [Sussex] County Council and it is in effect, for practical purposes, an amendment to

43

special use permit decisions as categorically akin to zoning and therefore legislative.[150]   In 2005, *Gibson v. Sussex County Council* clarified that Sussex County special use decisions are legislative only where the special use at issue is permitted "in all zones indiscriminately."[151]  Only two of Delta Eta's Sussex County special use cases post-date *Gibson*.[152]  One of those two cases addressed a motion for attorneys' fees following an earlier dismissal for lack of standing, and therefore cannot bear on whether this Court has jurisdiction over a special use decision.[153]

---

the Zoning Code."); *Bay Colony II*, 1984 WL 159381, at *3 (reasoning the granting of a special use permit was tantamount to rezoning, and holding "that the type of conditional use permit granted in the present case could only be granted only by ordinance and the statutory procedural requirements for the adoption of an ordinance must be followed"); *Steen*, 576 A.2d at 648 ("As previously discussed, the requirements for a rezoning are also applicable to County Council decisions granting or denying conditional use permits." (citing *Tidewater*, 1986 WL 10082, *Sears*, 1986 WL 10085, and *Bay Colony II*, 1984 WL 159381)).

[150] *Steen*, 576 A.2d at 648 ("While it is clear that the grant of a Conditional Use Permit is not the same as a rezoning, such decisions in Sussex County, as previously indicated, must be treated as a rezoning for purposes of review by this Court."); *Tidewater*, 1986 WL 10082, at *2 ("The above-described requirements are also applicable to County Council decisions granting conditional use permits." (citation omitted)); *Bay Colony I*, 1984 WL 159382, at *1 ("Chancellor Duffy held in an unreported case in 1972 that [a statute governing actions challenging "relating to zoning, among other things"] applies to actions challenging conditional use applications, at least in Sussex County, because under the Sussex County zoning scheme the grant of a conditional use is done by the County Council and it is in effect, for practical purposes, an amendment to the Zoning Code.  I agree." (citation omitted) (citing *Sea & Pines, Inc. v. E. Coast Resorts, Inc.*, No. 421-S (Del. Ch. May 17, 1972))).

[151] 877 A.2d at 65.

[152] *Norino*, 2010 WL 3610206; *Barry*, 2006 WL 3246344.

[153] *Barry*, 2006 WL 3246344.

Of Delta Eta's three special permit cases concerning land outside of Sussex County,[154] one also addressed a zoning decision and could therefore be categorized as a zoning case.[155] I assume that the two cases addressing only special use permits found, for reasons not stated in the opinions, that an injunction was necessary to afford full and fair relief. These cases support, rather than refute, the proposition that this Court should consider whether a special use decision was made in a legislative or quasi-judicial capacity before assuming subject matter jurisdiction. To be sure, the Superior Court has exercised jurisdiction over claims challenging special use permit decisions as well.[156]

This Court's jurisprudence on subject matter jurisdiction over special use permit challenges is perhaps not the clearest: the vast majority of these cases do not expressly confront the question of subject matter jurisdiction, or address whether the relevant entity acted in a judicial or quasi-judicial capacity. Time-tested principles continue to guide whether this Court has jurisdiction over a challenge to a municipal or county decision as to the approval or denial of a special use permit. If the municipality or county was acting in a quasi-judicial capacity, the plaintiff bears the

---

[154] *Coker*, 2008 WL 5451337; *Sears*, 1986 WL 10085; *Wilkins*, 1981 WL 88252.

[155] *Wilkins*, 1981 WL 88252.

[156] *E. Lake P'rs*, 655 A.2d at 825.

burden of demonstrating why a writ of certiorari or declaratory judgment from the Superior Court would be an inadequate remedy.[157]

### D. Delta Eta Has Failed To Plead A Section 1983 Claim.

Having concluded this Court lacks subject matter jurisdiction over Delta Eta's frontal attacks on the denial of the Special Use Permit in Counts I and II, I turn to Delta Eta's third count, by which Delta Eta seeks injunctive relief under 42 U.S.C. § 1983 to remedy the Individual Defendants' alleged violation of Delta Eta's right to free association with PiKA and its members. The Individual Defendants moved to dismiss Count III on the theory that Delta Eta has not pled a legally protected relationship.[158]

Whether Delta Eta has adequately plead a protected relationship with PiKA directly informs whether Delta Eta has suffered a cognizable injury, but it also relates to whether Delta Eta has stated a claim upon which relief can be granted. Where "the issue of standing is so closely related to the merits, a motion to dismiss based on lack of standing is properly considered under Rule 12(b)(6) rather than Rule

---

[157] *See Legent Gp., LLC v. Axos Fin., Inc.*, 2021 WL 73854, at *2 (Del. Ch. Jan. 8, 2021) ("Plaintiffs bear the burden of establishing subject matter jurisdiction.").

[158] Defendants' opening brief presented this argument both as a failure of standing, and a failure to state a claim. The standing argument was based on the theory that Delta Eta was presenting a claim for violation of PiKA's constitutional rights. Op. Br. at 16. Delta Eta clarified it was presenting a claim for violation of its own right to associate with PiKA. Ans. Br. at 38–39.

12(b)(1)."[159]   The standard governing motions to dismiss Court of Chancery Rule

12(b)(6) is as follows:

> (i) [A]ll well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[160]

In defining the right to intimate association, the Supreme Court "has concluded that the choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme."[161]   At a minimum, the right to intimate association "extends to relationships that 'attend the creation and sustenance of a family—marriage, childbirth, the raising and education of children, and cohabitation with one's relatives.'"[162]   But "[w]hether the right extends to other relationships depends on the extent to which those relationships share the characteristics that set family

---

[159] *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1280 (Del. 2007); *id.* at 1286.

[160] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (footnotes omitted) (quoting *Kofron v. Amoco Chems. Corp.*, 441 A.2d 226, 227 (Del. 1982)).

[161] *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984).

[162] *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 996 (2d Cir. 1997) (quoting *Roberts*, 468 U.S. at 619).

relationships apart—small, select, and secluded from others."[163] Generally, courts

have not expanded the right to intimate association to business relationships.[164]

Delta Eta has pled that it is PiKA's "housing corporation,"[165] and also that it

is PiKA's "educational . . . foundation."[166] Delta Eta applied for the Special Use

Permit as the property owner, but the permit would be held by PiKA as the fraternity

chapter.[167] According to Delta Eta, the only effect of receiving the special use permit

is that the House may have a formal affiliation with a university-recognized

fraternity associated with a national fraternity organization. Delta Eta pled that "[a]

fraternity student residence only differs from a regular student residence in one

---

[163] *Id.* (quoting *Roberts*, 468 U.S. at 620).

[164] *Id.* ("The Constitution does not recognize a generalized right of social association. The right generally will not apply, for example, to business relationships . . . ." (citing *Roberts*, 468 U.S. at 620)); *Trade Waste Mgmt. Ass'n, Inc. v. Hughey*, 780 F.2d 221, 237 (3d Cir. 1985) ("A waste disposal business licensed by the state as a public utility is simply not the kind of intimate associations that has qualities analogous to a family. It is far more analogous to a typical business enterprise. Such enterprises, small and large alike, involve public rather than private aspects of the lives of the participants, and they engage in an activity that has little if anything to do with personal, as distinct from economic, self realization."); *Fiore v. City of Detroit*, 2019 WL 3943055, at *5 (E.D. Mich. Aug. 21, 2019) ("Business relationships do not support intimate association claims."), *aff'd sub nom. B & G Towing, LLC v. City of Detroit, MI*, 828 F. App'x 263 (6th Cir. 2020); *Hurley v. Town of Southampton*, 2018 WL 3941944, at *7 (E.D.N.Y. Aug. 13, 2018) ("The right [of intimate association] generally will not apply, for example, to business relationships." (internal quotation marks omitted) (quoting *Sanitation & Recycling*, 107 F.3d at 996, and then citing *Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City Univ. of New York*, 502 F.3d 136, 144 (2d Cir. 2007))).

[165] Am. Compl. ¶ 14.

[166] *Id.* ¶ 67.

[167] *See* City Code § 32-11(b)(14)(e); Report at 3.

respect: association with a University recognized fraternity affiliated with a national fraternity organization—*i.e.*, fraternity associational status."[168]    Regardless of whether the Special Use Application is granted, Delta Eta may rent the house to up to eighteen tenants.  From the City Code, it appears that Delta Eta could not rent the house "exclusively" to fraternity members unless Delta Eta had a permit, but whether the permit afford additional benefits is unclear.[169]  Delta Eta attempted to add additional facts through its answering brief, but "[a]rguments in briefs do not serve to amend the pleadings."[170]

These allegations demonstrate that the special use permit would have allowed Delta Eta to rent the House exclusively to members of PiKA.  Denial of the Special Use Application prevented Delta Eta from becoming PiKA's members' landlord, in addition to being PiKA's housing corporation and educational corporation.[171]  The allegations in the Amended Complaint fail to support an inference that this

---

[168] Am. Compl. ¶ 41.

[169] *See* City Code § 32-11(b)(14).

[170] *CALPERS v. Coulter*, 2002 WL 31888343, at *12 (Del. Ch. Dec. 18, 2002). Specifically, Delta Eta added that its "intended purpose" of purchasing the House was to "leas[e] rooms to members of PiKA"; that PiKA would not enter into a lease with Delta Eta, but that individual PiKA members would enter those leases; that Delta Eta is "an alumni housing corporation" and PiKA is "its intended beneficiary"; that "PiKA was a part of the *raison d'etre* for Delta Eta"; and that "Delta Eta is not associated with any other organizations, persons, fraternities, or sororities." Ans. Br. at 18, 24–25, 38, 40.

[171] *See Michaelidis v. Berry*, 502 F. App'x 94, 96–97 (2d Cir. 2012) ("Plaintiffs' relationships with their landlords, their restaurant customers, and their employees are not sufficiently intimate to implicate this protection.").

49

relationship is anything more than a business relationship, which is not protected by the First Amendment right to intimate association.[172] Delta Eta has failed to state a Section 1983 claim.

### E.   Delta Eta's Motion For Sanctions Is Denied.

Delta Eta has moved for sanctions under Court of Chancery Rule 11, claiming Defendants' arguments as to both subject matter jurisdiction and standing were legally frivolous. Rule 11 provides, among other things, that when an attorney presents a brief or motion to the Court, that attorney is certifying that the legal arguments made therein are not legally frivolous.[173] Defendants' arguments as to subject matter jurisdiction and standing were far from frivolous, and soundly in accord with Delaware law. I therefore deny Delta Eta's motion for sanctions.

## III.   CONCLUSION

For the forgoing reasons, Defendants' Motion to Dismiss is **GRANTED**. Plaintiff's Motion for Rule 11 Sanctions is **DENIED**. Delta Eta may transfer the matter to Superior Court under 10 *Del. C.* § 1902 within sixty days.

---

[172] *See supra* note 164.

[173] Ct. Ch. R. 11(b).